UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**INTERIM REPORT,
RECOMMENDATION
AND ORDER**

Criminal No. 7-CR-212(A)(M)

v.

MALIK BAZZI, et al.,

Defendants.

This case was referred to me by Hon. Richard J. Arcara for supervision of pretrial

proceedings (Dkt. #37). Before me are the pretrial motions of defendants Fowler, Naim, Lin, Hu

and Wang.[1] Oral argument was conducted before me on February 5, 2009. At that time, I

advised the parties that I would first determine which motions require evidentiary hearings,

which is addressed herein.

This Interim Report and Recommendation only addresses defendants' requests for

evidentiary hearings. Decision on all other issues raised in defendants' pretrial motions will be

deferred pending conclusion of the evidentiary hearings.


**1.     Defendant Wang**

Defendant Wang argues that the evidence seized from his bedroom during the

September 12, 2007 search of 417 Bradley Avenue, Staten Island, New York should be

suppressed because the September 11, 2007 search warrant issued by Hon. Marilyn D. Go,

Magistrate Judge in the Eastern District of New York (The government's response (Dkt. #332),

---

[1]     All defendants have moved to join in each other's motions.

Ex. 1) lacked probable cause. Defendant Wang's Supplemental Motion for Suppression (Dkt. #323).[2]

"These arguments challenge the facial validity of the warrants and warrant applications, and may be evaluated without an evidentiary hearing." United States v. Morgan, 2008 WL 4279490, *1 (N.D.N.Y. 2008). Therefore, I find that defendant Wang's motion can be resolved without an evidentiary hearing.

## 2. Defendant Hu

### A. Motions for Franks Hearings

"A district court may not admit evidence seized pursuant to a warrant if the warrant was based on materially false and misleading information." United States v. Levasseur, 816 F. 2d 37, 43 (2d Cir. 1987) (citing Franks v. Delaware, 438 U.S. 154 (1978)). "There is . . . a presumption of validity with respect to the affidavit supporting the search warrant." Franks, supra, 438 U.S. at 171. Therefore, to establish entitlement to a Franks hearing, a defendant must make a "'substantial preliminary showing' that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." United States v. Falso, 544 F.3d 110, 125 (2d Cir. 2008). "To avoid fishing expeditions into affidavits that are otherwise presumed truthful, . . . to mandate an evidentiary hearing:

---

[2]     The government concedes that defendant Wang's "supplemental motion and affidavit may be fairly read to allege standing to contest the search of the Staten Island premises." The government's response (Dkt. #332), ¶3.

'[T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.'" Id. (quoting Franks, supra, 438 U.S. at 171).

"Even after these requirements are met, no hearing will be required if, setting aside the affidavit's alleged misstatements, the remaining content is sufficient to support a finding of probable cause. Only if the remaining content is insufficient to [sic] the defendant entitled to a hearing." United States v. Hennings, 1997 WL 714250, *5 (W.D.N.Y. 1997) (Arcara, J./Heckman, M.J.).

On May 22, 2007 Hon. William M. Skretny signed an order authorizing the interception of wire communications over the telephones used by defendants Waters and Bazzi ("Title III warrant") .[3] The government's consolidated response (Dkt. #287), Ex. 14. This application was supported by the affidavit of Kevin Ryan, a Special Agent with Immigration and Customs Enforcement. Id. at Ex. 13.

---

[3]     On June 25, 2007 Judge Skretny's Title III warrant was extended to the telephones of defendants Bazzi, Rachid, and Wang; on August 1, 2007, to the telephones of defendants Bazzi, Wang and Rachid; and on September 7, 2007, to the telephones of Wang and Bazzi. The government's consolidated response (Dkt. #287), p. 2 n. 2.

### i.     Agent Ryan's Affidavit in Support of the Wiretap Warrant

Defendant Hu argues that Agent Ryan's affidavit in support of the wiretap warrant presented to Judge Skretny falsely attempted to demonstrate that normal investigative means had failed or were unlikely to succeed. Defendant Hu's Motion (Dkt. #247), ¶111.[4] In support of this argument, defendant Hu identifies the following paragraphs in Agent Ryan's affidavit as being false or unsupported by the record:

> *"Street surveillance not linked to intercepted telephone calls*
> *cannot link unknown individuals or locations to the enterprise."*
> The government's consolidated response (Dkt. #287), Ex. 13,
> Affidavit of Agent Ryan, ¶67(a).

Defendant Hu argues that this is "patently untrue, and the surveillance had already proven it untrue because progress reports filed with Judge Skretny repeatedly showed individuals moving boxes with footwear in or out of Bazzi's warehouse, to UPS, etc. For instance, surveillance of the warehouses could produce photos of purchasers of footwear, who in turn could be followed to the location in which they sell said footwear. Locating street level retailers of the footwear cannot be accomplished through the use to [*sic*] phone conversations. It is also clear that telephone conversations cannot tell investigators were someone lives or works or where they are going to or coming from." Defendant Hu's Motion (Dkt.#247), ¶115.

Defendant Hu's challenge appears to be based on a difference of opinion as to whether street surveillance was a viable investigative tool. This is insufficient to warrant a hearing. "No [Franks] hearing is required 'merely because the defendants disagree with the

---

[4]     The government concedes that defendant Hu has standing to raise this challenge as he was intercepted over the Bazzi wiretap. The government's response (Dkt. #287), p. 70 n. 52.

government's assessment of the need for a wiretap and with the judge's determination that an order is appropriate.'" United States v. Sanchez-Flores, 1995 WL 765562, *5 (S.D.N.Y 1995).

Defendant Hu also argues that surveillance "had *already* proven [Agent Ryan's statement] untrue because progress report filed with Judge Skretny" showed otherwise. Defendant Hu's Motion (Dkt.#247), ¶115 (emphasis added). However, it is unclear how progress reports filed with Judge Skretny after the warrant was signed establishes that Agent Ryan's statements were untrue when made. Such retroactive analysis may establish that Agent Ryan's assertions were incorrect, but this alone fails to establish that they were deliberate falsehoods or made with reckless disregard for the truth. See United States v. Estrada, 1995 WL 577757, *7 (S.D.N.Y.1995), aff'd, 164 F.3d 620 (2d Cir. 1998) ("'Monday morning quarterbacking as to what investigative techniques the agents should have employed in addition to what they did employ is utterly unrealistic, if not naive.'"). Moreover, any subsequent investigative techniques employed, including street surveillance, presumably had the benefit of the information garnered from the Title III warrant.

> "Street activities of . . . WATERS and [BAZZI], or anyone else using telephone . . . . are meaningless to police unless the activities can be linked to an intercepted telephone message. Street activity linked to intercepted crime-related conversations, however, can enable the identification of parties, vehicles, and premises connected to the criminal enterprise." The government's consolidated response (Dkt. #287), Ex. 13, Affidavit of Agent Ryan, ¶67(b).

Defendant Hu argues that this is "patently untrue" because "following these individuals would absolutely have determined all retailers and all sources of any potential

'counterfeit' footwear, which electronic surveillance could not do." Defendant Hu's Motion (Dkt. #247), ¶115.

Again, such disagreement with Agent Ryan's assessment of the need for a wiretap is insufficient to establish defendant Hu's entitlement to a Franks hearing. *See* Sanchez-Flores, *supra*, 1995 WL 765562 at *5. Defendant Hu's claim is also unaccompanied by any offer of proof.

> *"Only by intercepting telephone conversations and obtaining previously unknown names, addresses, telephone numbers, and codes which may be linked to new people or addresses can the full extent of this criminal enterprise be understood."* The government's consolidated response (Dkt. #287), Ex. 13, Affidavit of Agent Ryan, ¶67(c).

Defendant Hu argues that "this is also patently false, because what was clear in Bazzi's business is that he had personal contact with Waters and Waters had to have personal contact with those to whom he sold shoes, and that where there was no such personal contact Bazzi was sending goods by common carrier, primarily one UPS store in New York City, through whom all recipients could be identified. Each common carrier package had a name and address on it and each of those individuals could have been check [*sic*] for any involvement in the enterprise. However, this was not done and instead an intrusive wiretap was requested and used." Defendant Hu's Motion (Dkt. #247), ¶117.

Again, such disagreement with Agent Ryan's assessment of the need for a wiretap is insufficient to establish defendant Hu's entitlement to a Franks hearing. *See* Sanchez-Flores, *supra*, 1995 WL 765562 at *5.

> *"Surveillance of the parties has proven to be difficult. Telephone interception will enable the police to forego surveillance when*

> *there is no suspected criminal transaction occurring. This will be*
> *safer for the investigators and result in less chance of detection,*
> *and protect the privacy of acquaintances and family members*
> *of . . . WATERS and [BAZZI] who have no connection to their*
> *counterfeiting distribution activities."* The government's
> consolidated response (Dkt. #287), Ex. 13, Affidavit of Agent
> Ryan, ¶67(d).

Defendant Hu argues that "this is no 'full and complete statement' justifying a conclusion that normal investigative means would be 'too difficult' or 'too dangerous.' These are boilerplate assertions that are not sustained by any facts. The expression of concern for the privacy of innocent family members is belied by the unwarranted seizure of personal belongings of defendant's son during the search of their home, an [*sic*] further by the request for permission to intercept background communications and 'off hook' conversations in the present eavesdrop application. The assertion that it would be 'safer' is hollow without any suggestion of actual source of danger from the individuals under investigation." Defendant Hu's Motion (Dkt. #247), ¶118.

This argument merely challenges the sufficiency of Agent Ryan's statement of need. Defendant Hu points to no evidence indicating that Agent Ryan's statement was a deliberate falsehood or made in recklessness disregard for the truth.

> *"During attempts to conduct surveillance while WATERS was*
> *operating a motor vehicle, agents observed WATERS drive in an*
> *evasive manner, often exceeding the posted speed limits, making*
> *automobile surveillance difficult if not dangerous."* The
> government's consolidated response (Dkt. #287), Ex. 13, Affidavit
> of Agent Ryan, ¶68.

Defendant Hu argues that "this claim is transparently contrived. But there is no mention of 'evasive' driving or exceeding the 'posted speed limit' in any of the Ten Day Report

[*sic*] or Ten Day Letters that were provided to the court or in any application for extension of the eavesdropping order. In fact, the only mention of the vehicle surveillance was on May 24, 2007 which successfully led the agents to Waters' home, and boxes of shoes which fell off a truck". Defendant Hu's Motion (Dkt. #247), ¶120.

The May 24, 2007 vehicle surveillance and applications for extensions occurred after the Title III warrant was signed by Judge Skretny on May 22, 2007. The government's consolidated response (Dkt. #287), Ex. 14. Although Agent Ryan's statements concerning the need for electronic surveillance may have ultimately proven unfounded, such retroactive analysis fails to establish that Agent Ryan's statements were made with deliberate falsehood or in reckless disregard for the truth. *See* Estrada, *supra*, 1995 WL 577757 at *7. Moreover, any subsequent investigative techniques employed, including surveillance of defendant Waters' vehicle, presumably had the benefit of the intercepted telephone calls.

It is also unclear whether defendant Hu is referencing the 10-day letters provided to Justice Wolfgang (The government's consolidated response (Dkt. #287), Exs. 8-10) or to Judge Skretny. However, either way, defendant Hu's argument fails. The ten-day reports were provided as a summary of the telephone calls intercepted in connection with the eavesdropping warrant executed by Justice Wolfgang. Thus, it is not surprising that they would not reference the physical surveillance being conducted, including any observations of defendant Waters' driving. Likewise, any reports provided to Judge Skretny in regard to the Title III warrant would only provide information subsequent to Agent Ryan's affidavit, and thus are irrelevant as to what Agent Ryan knew when he made the disputed statements to Judge Skretny.

Beyond these unsubstantiated assertions, defendant Hu fails to provide any evidentiary support for his claims. Despite the government's representation at oral argument that it has provided defendant Hu with all physical surveillance reports, defendant Hu has failed to present any of these reports in connection with his motion, or to supplement his motion with such reports.

> "Intensive surveillance of Waters and [Bazzi] may, in fact, jeopardize the case. During controlled purchases of narcotics conducted by DEA Cooperating Source's (CS's) . . . Waters claimed to have many friends in the neighborhood where he distributes his drugs. Waters has informed DEA CS's that these individuals . . . keep him informed if the police are in the area. Based upon current surveillance, it is believed that WATERS has supplied the same principals used in the trafficking of narcotics, in the trafficking of his counterfeit merchandise." The government's consolidated response (Dkt. #287), Ex. 13, Affidavit of Agent Ryan, ¶70.

Defendant Hu argues that "equating this matter to that of a narcotics purchase is another way to distort the need for wiretaps. In fact . . . there was no problem in making undercover purchases. . . . In fact, on June 6, 2007 undercover . . . investigators made three purchases of counterfeit Nike sneakers . . . . The fallacy here is that 'intensive' surveillance was needed. There is no mention of the possible use of a GPS tracking device attached to a vehicle as a less intrusive way in which to monitor the movement of individuals. . . . And the agents do not mention the obvious possibility of remote controlled cameras to assist surveilling Bazzi's warehouse." Defendant Hu's Motion (Dkt. #247), ¶¶122-124.

Again, defendant Hu relies on information gained after Agent Ryan presented his affidavit to Judge Skretny on May 22, 2007. While his beliefs about the viability of alternative investigative techniques may have ultimately been unfounded, such retroactive analysis fails to

-9-

establish that Agent Ryan's statements were either deliberate falsehoods or made in reckless disregard for the truth. Although Agent Ryan did not mention the possibility of GPS or remote controlled cameras, defendant Hu has introduced no evidence that this omission was deliberate or in reckless disregard for the truth. "Agents necessarily pick and choose in drafting their affidavits: what must be shown is intentional or reckless omission." United States v. Feola, 651 F. Supp. 1068, 1109 (S.D.N.Y. 1987), aff'd, 875 F. 2d 857 (2d Cir. 1989), cert. denied, 493 U.S. 834 (1989).

> "*Close surveillance of the subjects is virtually impossible. Even if WATERS and [BAZZI] did meet with his/their distributors or suppliers (and assuming also, they could be identified), I do not believe that we could get close enough to overhear their conversations in any form or fashion to establish their culpability.*" The government's consolidated response (Dkt. #287), Ex. 13, Affidavit of Agent Ryan, ¶69.

Defendant Hu argues that this statement is "just another 'straw man' argument put forth by the government raising improbably [*sic*] investigation techniques and brushing them aside. This paragraph is really taken from the typical boilerplate affidavit that is used in narcotics cases. But the attempt is made to suggest even greater need for electronic surveillance because the conversations are needed to show culpable knowledge. However he points to no conversations which actually suggest such culpable knowledge and, in all progress reports there do not appear to be any such illuminating conversations." Defendant Hu's Motion (Dkt. #247), ¶125.

Although Agent Ryan's beliefs about the need for electronic surveillance may have ultimately been unfounded as established in subsequent progress reports, such retroactive

analysis fails to establish that his statements were deliberate falsehoods or made in reckless disregard for the truth. *See* Estrada, *supra*, 1995 WL 577757 at *7.

> "Based upon information from the intercepted telephone conversations, and from conventional physical surveillance, an additional search warrant(s) could theoretically be sought for a vehicle or premises upon delivery of counterfeit merchandise, but any resulting seizure would not reveal the ultimate source of the counterfeit merchandise, the identity of all those responsible, or even all local storage locations, and may not result in the seizure of any additional counterfeit merchandise. Thus, the transporter might be arrested, but the network would otherwise remain intact, and its source(s) of supply would not be discovered. Additionally, collection of shipment records from legitimate shippers . . . might well result in interdiction of counterfeited merchandise but it would not necessarily provide evidence of guilty knowledge or intent. Based upon my experience . . ., only through the interception of telephone conversations will the intention and knowledge of the targets about the nature of the merchandise be revealed beyond a reasonable doubt. I say this, in part, because although counterfeit footwear, such as Nike sneakers, are contraband, they are not contraband in the same sense as a bag of cocaine, the illegal possession of which is generally well known. Without interception of pertinent telephone conversations, a person in possession of counterfeited merchandise could very well claim that he/she was not aware of the criminal nature of the product, and so escape liability."* The government's consolidated response (Dkt. #287), Ex. 13, Affidavit of Agent Ryan, ¶71.

Although defendant Hu cites to this paragraph of Agent Ryan's affidavit (Defendant Hu's Motion (Dkt. #247), ¶123), the basis for his challenge to this statement is unclear. In any event, I find that no Franks hearing is warranted as result of this statement.

> "Conventional searches and seizures could potentially produce distribution and other records, but such could also contain coded names and numbers. Without telephone interception, it would be impossible to determine whether these code names and numbers refer to distributors, buyers, wholesalers or financiers of the illegal distribution system."* The government's consolidated response (Dkt. #287), Ex. 13, Affidavit of Agent Ryan, ¶72.

-11-

Defendant Hu argues that this "is just another 'straw man' argument about searches spiced with bogus references to 'codes' and any 'coded names.'" Defendant Hu's Motion (Dkt. #247), ¶126.

This argument amounts to a disagreement with Agent Ryan's assessment of the need for a wiretap, which is insufficient to establish defendant Hu's entitlement to a <u>Franks</u> hearing. *See* <u>Sanchez-Flores</u>, *supra*, 1995 WL 765562 at *5. Defendant Hu points to no evidence indicating deliberate falsehood or recklessness by Agent Ryan in stating that any potentially coded evidence obtained could be benefitted by electronic surveillance.

> *"It is also believed, based on the observations of the surveillance officers, that WATERS and [Bazzi] utilize multiple locations in both the New York City and Buffalo, New York area to store large quantities of contraband merchandise. Without interception, it would be difficult to identify all of the enterprise locations and search them before the Interceptees have a chance to remove or destroy evidence. Furthermore, surveillance indicates that WATERS and [Bazzi] attempt to limit their exposure to large quantities of counterfeit merchandise at various times during the distribution and transportation stages of the racketeering enterprise."* The government's consolidated response (Dkt. #287), Ex. 13, Affidavit of Agent Ryan, ¶73.

Defendant Hu argues that "the visual 'observations' are not descrigbed [*sic*] in the affidavit and are not supoprted [*sic*] by the 10 day reports. Surveillance of Mr. Water's [*sic*] was able to produce one location where footwear was being stored - in his home. Mr. Bazzi's [*sic*] had a single warehouse according to reports. Moreover, the reports provided no indication that, like drug deals, they used others to transport, except UPS, or 'attempted to limit their exposure to large quantities.'" Defendant Hu's Motion (Dkt. #247), ¶127.

Although Agent Ryan did not include a description of his visual observations, defendant Hu has introduced no evidence to establish that he did so as a deliberate falsehood or in reckless disregard for the truth. *See* Feola, *supra*, 651 F. Supp. at 1109. Even if prior surveillance of defendant Waters was able to establish that counterfeit footwear was being stored in his home, the government's purpose was to determine the extent of the conspiracy and catch all the participants. *See* the government's consolidated response (Dkt. #287), Ex. 13, Affidavit of Agent Ryan, ¶65.

Thus, Agent Ryan's knowledge of one location where the counterfeit sneakers were being stored would not end the government's inquiry. *See, e.g.*, Feola, *supra*, 651 F.Supp. at 1104-1105 ("Rosner suggests that if CI # 1 had been tailed, the drugs he would have brought back from Florida would have provided probable cause for the immediate arrest of Farese and Feola. . . . This neglects the Government's contention that Feola and Farese were members of a larger drug conspiracy of unknown proportions. The Government's purpose was not merely to arrest Feola and Farese, but to determine the extent of the conspiracy and catch all the participants. Thus, any move to arrest Feola or Farese at that point, so far from being a normal investigative technique, would have compromised the entire investigation.").

> *"Interrogation of the participants identified to date in the above-described activities would alert the participants to the existence of this investigation. This would cause them to change the methods and places of their operation, and effectively end this investigation without identification of the suppliers, discovery of the counterfeit merchandise on hand, or any other participants in the enterprise. Furthermore, without the sought electronic surveillance, it would be impossible to discover all of the identities wholesalers, retailers and couriers of counterfeit merchandise in order to identify them as witnesses (or defendants) at a later time."* The government's

-13-

consolidated response (Dkt. #287), Ex. 13, Affidavit of Agent Ryan, ¶74.

Defendant Hu argues that "this is another 'straw man' argument that interrogation of suspects would be used." Defendant Hu's Motion (Dkt. #247), ¶128.

This argument amounts to a disagreement with Agent Ryan's assessment of the need for a wiretap, which is insufficient to establish defendant Hu's entitlement to a <u>Franks</u> hearing. *See* <u>Sanchez-Flores</u>, *supra*, 1995 WL 765562 at *5. Defendant Hu points to no evidence indicating that Agent Ryan's statement that interrogations of suspects would undermine the investigation was a deliberate falsehood or made in reckless disregard for the truth.

> *"Collection of shipping records from legitimate shippers such as United Parcel Service would also not fully achieve all of the objectives of this investigation, for the same reasons indicated above."* The government's consolidated response (Dkt. #287), Ex. 13, Affidavit of Agent Ryan, ¶75.

Defendant Hu argues that "just because the collection of shipping records from UPS . . . would not produce the full achievement of goals it does not mean it [*sic*] that should not have been attempted prior to the use of wiretaps. In fact the shipping records . . . can produce the name and addresses of not only individuals purchasing small quantities but also the name and locations of street level retailers. In fact the ten day reports do not mention the tracking common carrier packages as ever being used as a form of non-intrusive surveillance. Nor does the affidavit suggest how electronic surveillance could 'fully achieve all fo [*sic*] the objectives.'" Defendant Hu's Motion (Dkt. #247), ¶129.

This argument merely challenges the sufficiency of Agent Ryan's statement of need. Defendant Hu points to no evidence indicating that Agent Ryan's statements were a deliberate falsehood or made in reckless disregard for the truth.

> "Other normal avenues of investigation have also been carefully evaluated for use and/or have already been attempted with limited results. The traditional investigative techniques utilized thus far have included the use of confidential sources, interviews, physical surveillance, covert surveillance cameras, introduction of undercover law enforcement officer(s), law enforcement/public source data base records checks, review of pen registers/detailed calling records information, and a search warrant. I have also had access to wiretap surveillance upon WATERS' telephone . . . . None of these techniques have achieved all of the objectives of this investigation." The government's consolidated response (Dkt. #287), Ex. 13, Affidavit of Agent Ryan, ¶76.

Defendant Hu argues that "the list of 'traditional' methods of investigation actually describes methods which were not ruled out - 'covert surveillance camera', pen registers. Additionally there is no evidence that the officers actually attempted to 'achieve all of the objectives,' like locating foreign factories, which are stated with such exaggeration as to insure that they can continue to make the same hollow claim." Defendant Hu's Motion (Dkt. #247), ¶131.

Defendant Hu points to no evidence indicating deliberate falsehood or recklessness by Agent Ryan in stating that the traditional investigative techniques employed did not achieve all of the objectives of the investigation.

Based upon the record before me, I conclude that defendant Hu has not made a "substantial" preliminary showing necessary to warrant a Franks hearing concerning Agent Ryan's representations. Even if some of the offending statements were removed, I would find

-15-

that Agent Ryan's affidavit "provided an ample basis upon which the reviewing judge could find that the alternative investigative techniques requirement was satisfied." Estrada, *supra*, 1995 WL 577757 at *6. Therefore, I recommend that defendant Hu's motion for a Franks hearing be denied.

### ii. Search Warrant for of 3802 149th Place, Flushing, New York

Pursuant to arrest warrants issued in connection with the indictment, on September 12, 2007 defendants Hu and Lin were arrested at their 3802 149th Place residence. At that time items were observed in plain view and pursuant to a security sweep, including a stack of photographs of sneakers and a large amount of cash. Exhibits to defendant Lin's Motion (Dkt. #226), Ex. A, ¶19. On September 13, 2007, the government obtained a search warrant for 3802 149th Place based upon the items observed in plain view at the time of the September 12, 2007 arrest and other evidence, including items seized during a September 12, 2007 search of defendant Bazzi's storage facility. Id.

Defendant Hu argues that the search warrant application contained "both false statements and statements made in reckless disregard for their truth. And given the thinness of the probable cause showing in general, these statements were integral to any probable cause finding." Defendant Hu's Memorandum of Law (Dkt. #248), p. 40. Specifically, defendant Hu argues that she and "her husband [defendant Lin] are refugees from prosecution in China, and lawfully in the United States, a fact surely known to the investigators, or knowledge of which must be attributed to them. Also Ms. Hu and her husband have been in the country for not many years, and she and her husband are barely able to speak the most basic English, as the agents certainly would have known from overhearing her phone conversations. And yet these facts,

-16-

critical to estimating the likelihood that they may have been acting willfully or knowingly were concealed from the Magistrate." Defendant Hu's Motion (Dkt. #247), ¶¶80, 171. She also argues that "while the case is entirely about Nike footwear . . . Ms. Hu never even uses the term, nor is there attributed to her any words or statements suggesting she is aware that the footwear she was dealing with had a 'trademark' or that its sale with such a trademark was not completely licensed." Id. at ¶172.

The affidavit of Brian Hurwitz, a Special Agent with the Immigration and Customs Enforcement, submitted in support of the search warrant stated that on September 11, 2007, defendants Lin and Hu were indicted with conspiracy to traffic in counterfeit merchandise. Exhibits to defendant Lin's Motion (Dkt. #226), Ex. A, ¶14. Special Agent Hurwitz stated that surveillance on July 30, 2007 observed defendants Lin and Hu exit their 149th Place residence, and proceeded in a van to a storage unit maintained by defendant Bazzi at 201 64th Street, Brooklyn, New York. Id. at ¶16. On August 19, 2007, a call was intercepted in which defendant Bazzi told defendant Hu to deliver 100 boxes tomorrow. The next day, surveillance observed Bazzi and Hu unloading "what appeared to be boxes consistent with those containing counterfeit sneakers from a truck into" the storage unit located at 201 64th Street. Id. at ¶17. A subsequent search of that storage unit on September 12, 2007 uncovered 400 cases of counterfeit sneakers. Id. at ¶18.

When defendants Lin and Hu were arrested at their 149th Place residence on September 12, 2007, the officers observed photographs of sneakers in plain view, and located approximately $1,800 in United States currency in a drawer of a coffee table during a security

sweep. Id. at ¶19.[5] Agent Hurwitz stated that based upon his investigation and experience, he was "aware that sellers of counterfeit merchandise frequently show pictures of their products to potential buyers." Id.

Defendant Hu's speculative and generalized assertions are plainly insufficient to constitute a "substantial preliminary showing" that Special Agent Hurwitz omitted this information as a deliberate falsehood or in reckless disregard for the truth. "Agents necessarily pick and choose in drafting their affidavits: what must be shown is intentional or reckless omission." Feola, supra, 651 F.Supp. at 1109. Therefore, I recommend that defendant Hu's request for a Franks hearing be denied.


B.      **Motion to Suppress Evidence from the Warrantless Search of 3802 149th Place, Flushing, New York on September 12, 2007.[6]**

Defendant Hu argues that "the entry into the premises at 3802 149th Place . . . on September 12, 2007, to effectuate the arrest of the accused was illegal, unsupported by a search warrant or consent of the occupants or any other authority to permit entry. A hearing would be required if the government asserts facts justifying the entry to the premises to effectuate an arrest." Defendant Hu's Motion (Dkt. #247), ¶68. In response, the government argues that the

---

[5]      Whether the currency was lawfully discovered as a result of a proper security sweep will be determined following the evidentiary hearing.

[6]      The government does not challenge defendant Hu's standing to challenge the search of 3802 149th Place. In fact, it concedes that this was defendant Hu's home. See The government's consolidated response (Dkt. #287), p. 78. Although all of the moving defendants join in each other's motions, only defendant Lin has standing to join in this motion. At oral argument, the government conceded that defendant Lin, who also resided at this address, and was arrested on September 12, 2007 with defendant Hu (Defendant Lin's Motion (Dkt. #226), Ex. A, ¶¶6 and 14), had standing to contest the search.

"officers went to Hu's home pursuant to an arrest warrant for both she and her husband, Lin. The existence of the arrest warrants constituted authority to enter the home to effectuate the arrests" and to seize evidentiary items or contraband in plain view. The government's consolidated response (Dkt. #287), p. 78.

"'[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.'" United States v. Lovelock, 170 F.3d 339, 343 (2d Cir. 1999), cert. denied, 528 U.S. 853 (1999) (*quoting* Payton v. New York, 445 U.S. 573, 603 (1980)). "In order to authorize entry into a person's home to execute a warrant for his arrest, the officers' belief that the residence to be entered is the home of the person named in the warrant need not be supported by 'probable cause.' Rather, 'the proper inquiry is whether there is a *reasonable belief* that the suspect resides at the place to be entered to execute [the] warrant, and whether the officers have reason to believe that the suspect is present.'" Id. (emphasis in original).

Based upon the record before me, I am unable to determine whether the officers had reason to believe that defendants Hu and Lin were present at 3802 149th Place at the time the arrest warrant was executed. Defendant Hu also argues that once inside the residence, the officers' alleged plain view search was improper. The government concedes that "ordinarily a hearing might be justified with respect to whether items were in fact seized in plain view, provided that this was the only basis for the search." The government's consolidated response (Dkt. #287), p. 79. Rather, it relies on the inevitable discovery rule to argue that this evidence would have been seized in any event pursuant to the September 13, 2007 search warrant for 3802 149th Place. The government's consolidated response (Dkt. #287), p. 78.

-19-

"The inevitable discovery exception to the exclusionary rule 'allows evidence initially detected as the result of unlawful government conduct to be introduced nonetheless if the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.' . . . In applying this exception, the court must determine, 'viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred.' . . . '[P]roof of inevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment and does not require a departure from the usual burden of proof at suppression hearings.' " United States v. Toole, 2008 WL 2323362, *15 (W.D.N.Y. 2008) (Payson, M.J.), Report and Recommendation adopted, 2008 WL 2354959 (W.D.N.Y. 2008) (Larimer, J.).

"Courts use a four-factor test to determine whether to apply inevitable discovery: '(1) the extent to which the warrant process has been completed at the time those seeking the warrant learn of the search, (2) the strength of the showing of probable cause at the time the entry occurred, (3) whether a warrant ultimately was obtained, albeit after the illegal entry, and (4) evidence that law enforcement agents 'jumped the gun' because they lacked confidence in their showing of probable cause and wanted to force the issue by creating a fait accompli.'" United States v. Bonczek, 2008 WL 4615853, *8 (S.D.N.Y. 2008). "Courts should not apply the doctrine of inevitable discovery unless there is '*a high level of confidence* that each of the contingencies required for the discovery of the disputed evidence would in fact have occurred.'" Id. (*quoting* United States v. Heath, 455 F. 3d 52, 55 (2d Cir. 2006)) (emphasis added).

Defendant Hu, relying on United States v. $639,558 in United States Currency, 955 F. 2d 712 (D.C. Cir. 1992), argues that the inevitable discovery exception does not apply to primary evidence seized incident to her arrest. Defendant Hu's Reply (Dkt. #291), p. 22. However, this distinction has been rejected. *See e.g.*, United States v. Taddeo, 724 F.Supp. 81, 87 (W.D.N.Y. 1989) (Larimer, J.), aff'd, 932 F.2d 956 (2d Cir. 1991) (unpublished) ("the Second Circuit has expressly rejected the direct-indirect evidence distinction drawn in earlier inevitable discovery cases."); United States v. Whitehorn, 829 F.2d 1225, 1231 (2d Cir. 1987), cert. denied, 487 U.S. 1237 (1988) (rejecting the argument that "the bomb sweep evidence cannot be deemed to have been inevitably discovered by legal means because the affidavit in support of the subsequent search was 'tainted' by its reference to or inclusion of information obtained from the sweep."); United States v. Zapata, 18 F. 3d 971, 979 n.7 (1st Cir. 1994) ("We decline to embrace the suggestion that courts should confine the inevitable discovery rule to cases in which the disputed evidence comprises a derivative, rather than primary, fruit of unlawful police conduct.").

Although it is possible that the inevitable discovery doctrine applies, the government has not introduced any evidence as to the circumstances surrounding the application for the September 13, 2007 search warrant, including whether the application process was under way before the arrest or simply as a result of it. Because I cannot conclude on the record before me whether the inevitable discovery doctrine applies, an evidentiary hearing is required to determine whether the items were lawfully seized incident to the September 12, 2007 arrest, as well as the applicability of the inevitable discovery doctrine.

**C.** **Overbreadth of the search conducted at 3802 149th Place pursuant to the September 13, 2007 search warrant**

Defendant Hu argues that an evidentiary hearing is necessary to resolve her claims that the September 13, 2007 search warrant was overbroad and that items were seized beyond the scope of the warrant. Defendant Hu' Post-Argument Submission (Dkt. #329), p. 3.

I find that this issue can be resolved based upon my review of the search warrant and inventory of the items seized, without the need for an evidentiary hearing.

**3.** **Defendant Fowler**

Defendant Fowler moves to suppress evidence seized on May 2 and/or May 4, 2008. Defendant Fowler's Motion (Dkt. #241), pp. 4-5. The government agrees to a hearing as to this motion. The government's consolidated response (Dkt. #287), p. 84.

**4.** **Defendant Smiley**

**A.** **Motion to Suppress Statements**

Defendant Smiley "reserves the right to challenge the admissibility of any statement which may be attributed to the Defendant should any such statements be offered in evidence against this Defendant". Defendant Smiley's Motion (Dkt. #223), p. 20. In response, the government states that a statement of defendant Smiley was produced during discovery and the does not object to the defendant "filing supplemental papers demonstrating why a suppression hearing would be justified". The government's consolidated response (Dkt. #287), p. 83.

However, at this time, defendant Smiley has not filed any motion to suppress the statements identified by the government. Absent any motion, I find no reason to schedule an evidentiary hearing on the suppression of defendant Smiley's statements.

## B.     Motion to Suppress Evidence

On September 11, 2007, Hon. G.R. Smith, United Magistrate Judge, United States District Court, Southern District of Georgia, signed a search warrant for Top of the Line Fashions, 2903 West Bay Street, Garden City, Georgia 31408, for violations of 18 U.S.C. §2320. Defendant Smiley's Motion (Dkt. #232), Ex. A. The warrant was supported by the affidavit of Joel Rountree, Special Agent, Immigration and Customs Enforcement. Id.

Defendant Smiley argues that Special Agent Rountree's affidavit "did not establish probable cause for the intentional trafficking in counterfeit shoes". Without submitting an affidavit from defendant Smiley, his counsel alleges, upon information and belief, that no inventory of the property seized was provided to defendant or promptly returned to the Magistrate Judge, no inventory was prepared in accordance with Rule 41(f)(1)(B), and the executing officer failed to give a copy of the warrant and a receipt for the property that was seized. Defendant Smiley's Motion (Dkt. #232), pp. 21-22. In response, the government argues that the search warrant is supported by probable cause. It also relies on the inventory of items seized, which was returned to Judge Smith on September 19, 2007. The government's consolidated response (Dkt. #287), p. 83-84, Ex. 17. [7]

---

[7]     The government does not contest defendant Smiley's standing to contest the search.

Because I can resolve defendant Smiley's motion by reviewing the face of the warrant and warrant application, I conclude that no suppression hearing is necessary. *See* Morgan, *supra*, 2008 WL 4279490 at *1.

### 5. Defendant Naim

Without even identifying the warrant he is referring to, defendant Naim broadly argues that it was "devoid of probable cause". Defendant Naim's Motion (Dkt. #230), ¶¶21-23. In response, the government clarifies that "all such evidence was seized from Bazzi's apartment pursuant to a search warrant." However, it argues that defendant Naim's motion should be denied because he has not established standing to contest the search. The government's consolidated response (Dkt. #287), p. 84.

Even assuming that defendant Naim can establish standing to challenge the search of defendant Bazzi's apartment, there is nothing to suggest that the issue of whether the warrant was supported by probable cause cannot be resolved on the papers. *See* Morgan, *supra*, 2008 WL 4279490 at *1.

### CONCLUSION

For these reasons, I recommend that defendant Hu's motions for Franks hearings be DENIED. I also order that evidentiary hearings are necessary to resolve defendant Hu's and Lin's motion to suppress evidence seized pursuant to the warrantless search of 3802 149th Place on September 12, 2007, and defendant Fowler's motion to suppress. All other requests for evidentiary hearings are denied. On or before April 30, 2009, the parties shall confer and provide

the court with mutually agreeable dates for the hearings ordered herein. Thereafter, the hearings will be scheduled by the court.

The time for filing objections to this Interim Report, Recommendation and Order, as well as to my Report, Recommendation and Order following the evidentiary hearings, will begin to run once the latter Report, Recommendation and Order has been filed.

**SO ORDERED.**

DATED:     April 21, 2009

JEREMIAH J. MCCARTHY
United States Magistrate Judge