IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

MALIK BAZZI, et al.,

                    Defendants.

---

**REPORT, RECOMMENDATION
AND ORDER**

07-CR-212(A)(M)

---

This case was referred to me by Hon. Hon. Richard J. Arcara for supervision of all pretrial matters [37].[1] Before me are the pretrial motions of defendants Smiley, Fowler, Naim, Lin, Hu and Wang. I previously issued an Interim Report, Recommendation and Order addressing which aspects of defendants' pretrial motions require evidentiary hearings [385].[2] Evidentiary hearings were conducted on defendants Lin's and Hu's motions to suppress evidence seized from the search of their apartment on September 12 and 13, 2007, and defendant Fowler's motion to suppress evidence seized on May 2 and 4, 2007 from a store in Dallas, Texas. Those motions are addressed in separate decisions [585 and 587]. This decision addresses all other remaining dispositive and non-dispositive aspects of defendants' pretrial motions.

## BACKGROUND

On September 11, 2007, defendants were named in an indictment charging them, *inter alia*, with conspiracy to traffic in counterfeit goods in violation of 18 U.S.C. §371.

---

[1]      Bracketed references are to the CM/ECF docket entries.

[2]      My Interim Report, Recommendation and Order also addressed Hu's motion for a <u>Franks</u> hearing [385].

Indictment [1], count one.  Of the 23 defendants named in the indictment, only defendants Smiley, Fowler, Naim, Lin, Hu and Wang currently have pretrial motions pending.


## ANALYSIS

**A.      Defendants' Non-Dispositive Motions**

**1.      Audibility Hearing**[3]

Defendants Smiley and Naim move for an audibility hearing to determine if any of the recordings the government intends to introduce at trial are audible.  Smiley's motion [232], Point XII; Naim's motion [230], ¶29.  Defendants do not allege that the recorded intercepted telephone conversations produced by the government are inaudible.  Rather, they request that an audibility hearing be conducted "*in the event* recordings are offered to the trier of fact which are not audible."  Smiley's motion [232], Point I (emphasis added); Naim's motion [230], ¶30.  The government responds that the motions are premature until defendants identify which portions of the recordings are inaudible.  Government's response [287], p. 85.  I agree with the government.  Therefore, this aspect of defendants' motions are denied as premature, without prejudice to renewal before Judge Arcara.

---

[3]      While defendants seek individual relief, defendants Hu, Fowler, Smiley, Lin, Wang, and Naim move to join in the motions made by their co-defendants.  Hu's motion [247], Schedule 7, p. 21; Fowler's motion [241], ¶2; Smiley's motion [293], ¶4; Lin's motion [225], Point C; Wang's motion [250]; Naim's motion [230], ¶34.

## 2.    Preservation of Rough Notes

Defendants Smiley and Naim move for preservation of the agents' rough notes and other investigative notes that were generated in during the investigation.  Smiley's motion [232], Point VII; Naim's motion [230], ¶31.  The government responds that "such is routinely undertaken pursuant to standard policies and practices of the Government" and that "notes of Government agents which are later incorporated into a written report need not be preserved or produced."  Government's response [287], p. 85.  Based on the government's representations, this aspect of defendants' motions are denied as moot.

## 3.    Informant Identity

Smiley and Naim move for the disclosure of the identity of informants.  Smiley's motion [232], Point II; Naim's motion [230], ¶13.  The government "doubts that it would call informants" to testify at trial, but states that in the event it calls informants to testify at trial, it will disclose all relevant information.  Government's response [287], p. 26 n. 25.  Based upon the government's representations, this aspect of defendants' motions is denied as moot.

## 4.    Production of Grand Jury Testimony

Defendant Hu seeks production of "summarized" grand jury testimony and defendant Smiley seeks production of "transcripts of all testimony before, and all exhibits considered by the Grand Jury that indicted Ms. Kim."[4]  Hu's motion [247], Schedule 4, p. 7; Smiley's motion [232], Point XII.  Hu does not provide an explanation for his need of a

---

[4]        I presume that the reference to "Ms. Kim" is erroneous.

summary of the grand jury testimony. However, Smiley asserts that he "has a particularized need for the transcripts . . . which outweighs the Grand Jury policy of secrecy" because he "is the subject of a bare bones Indictment that does not state any particular acts or overt acts that he committed in the course of the alleged criminal activity" and has "limited notice of who the witnesses against him will be" and needs to be "informed of what evidence actually exists against him . . . [to] intelligently make a decision as to his course of action." Smiley's motion [232], Point XII.

It is well established that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." Douglas Oil Company of California v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979). While grand jury proceedings carry a presumption of secrecy (*see* Rule 6(e)(2)); this presumption is rebuttable. *See* In re Grand Jury Subpoena, 103 F. 3d 234, 239 (2d Cir. 1996). "The burden is on the party seeking disclosure to show a 'particularized need' that outweighs the need for secrecy." Id. A party makes a showing of particularized need by demonstrating that the material which it seeks is "needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." Douglas Oil Co., 441 U.S. at 222.

Defendants fail to establish a "particularized need" for the inspection of grand jury transcripts. There are means short of obtaining the grand jury transcript, such as voluntary discovery and bills of particulars, that will permit Smiley to adequately prepare for trial. Therefore, this aspect of defendants' motions are denied.

5.      **Early Disclosure of <u>Jencks</u> Act Material**

Defendants Naim, Smiley and Hu seek early disclosure of <u>Jencks</u> Act material, 18 U.S.C. §3500.  Naim's motion [230], ¶¶24-28; Smiley's motion [232], Point VI; Hu's motion [247], Schedule 4, p. 13.  The deadline for disclosure sought by the defendants varies from immediate disclosure to 48 hours in advance of trial.  The government agrees to Naim's request to disclose witness statements 48 hours before trial.  Government's response [287], p. 28. Therefore, the government shall produce all <u>Jencks</u> Act material as directed by Judge Arcara, or in any event at least 48 hours prior to trial.

6.      **Disclosure of <u>Brady</u> Material**

Defendants Hu, Fowler, Smiley and Naim seek disclosure of <u>Brady</u> material. Hu's motion [247], Schedule 4, p. 11-14; Fowler's motion [241], ¶8; Smiley's motion [232], Point IV; Naim's motion [230], ¶¶17-20.  The government represents that it "is not aware of any exculpatory <u>Brady</u> material" and does not "anticipate that there will be substantial additional impeachment <u>Brady</u> or <u>Giglio</u> material."  Government's response [287], p. 28.  The government represents that in the event it becomes aware of any <u>Brady</u> material, it will provide such information when the government produces and delivers its <u>Jencks</u> Act material.  Government's response [287], p. 29.  Based upon the government's representations, this aspect of defendants' motions is denied as moot.

**7.      Fed. R. Evid. 404(b), 608 and 609 Evidence**

Defendant Smiley seeks disclosure of evidence pursuant to Rules 404(b), 608 and 609.   Smiley's motion [232], Point V.  Hu similarly seeks disclosure of "any alleged criminal or immoral conduct on the part of the defendant intended to be used against any defendant on the government's direct or rebuttal case."  Hu's motion [247], p. 13.  The government responds that it will provide such information in accordance with Judge Arcara's pretrial order.  Government's response [287], pp. 31-32.  Based upon the government's representations, this aspect of Smiley's and Hu's motions is denied.  *See*  United States v. Barnett,  2009 WL 1044559, *2 (W.D.N.Y. 2009) (Scott, M.J.).

Defendant Fowler moves to preclude the government from introducing his criminal record at trial.  Fowler's motion [241], ¶9.  This is an evidentiary matter that is better left for trial.  Therefore, this aspect of Fowler's motion is denied as premature, without prejudice to renewal before Judge Arcara.


**8.      Pre-Trial Production of Government Summaries**

Defendant Smiley seeks to inspect summaries the government intends to use at trial.  Smiley's motion [232], Point IX.   "The production of pretrial summaries and charts [is] more appropriately resolved by the District Court Judge presiding over the trial in this case."  Barnett, 2009 WL 1044559 at *3.  In any event, the government agrees to produce any summaries it intends to use at trial.  Government's response [287], p. 9.  Therefore, this aspect of Smiley's motion is denied as moot, without prejudice to renewal before Judge Arcara.

9.      **Sixth Amendment Testimonial Hearsay**

Defendant Smiley moves to preclude the government from "offering any testimonial hearsay by non-testifying persons/witnesses/co-[d]efendants at trial." Smiley's motion [232], Point XIII. The "exclusion of testimonial hearsay . . . [is] more appropriately resolved by the District Court Judge presiding over the trial in this case." Barnett, 2009 WL 1044559 at *3. Therefore, this aspect of Smiley's motion is denied as premature, without prejudice to renewal before Judge Arcara.

10.      *Voir Dire*

Defendants Smiley and Fowler seek to have their counsel participate in *voir dire*. Smiley's motion [232], Point VIII; Fowler's motion [241], ¶7. Smiley further seeks to conduct *voir dire* of government experts outside the presence of the jury "if the government subsequently identifies any experts." Smiley's motion [232], Point X. "The ability to *voir dire* jurors or expert witnesses . . . [is] more appropriately resolved by the District Court Judge presiding over the trial in this case." Barnett, 2009 WL 1044559 at *3. Therefore, this aspect of defendants' motions is denied as premature, without prejudice to renewal before Judge Arcara.

11.      **Rule 16 Discovery and Notice of Intention Pursuant to Rule 12(b)(4)(B)**

Defendants Hu, Fowler, Smiley, and Naim move for discovery pursuant to Rule 16 and for notice of the government's intention to use evidence at trial pursuant to Rule 12(b)(4)(B). Hu's motion [247], Schedule 4, p. 6; Fowler's motion [241], ¶3; Smiley's motion [232], Point III; Naim's motion [230], ¶¶3-10. The government represents that it "has  provided

all discovery in its possession required under Rule 16" and "continues to provide access to discovery up to and including the present time." Government's response [287], pp.15, 9 n. 9. Additionally, the government indicates that it "also provided specific notice under [Rule 12] of the evidence that it intended to use at trial." Id., p.16. Based upon the government's representations, this aspect of defendants' motions is denied as moot.

12.    **Bill of Particulars**

Defendants Hu Smiley, Naim, and Fowler seek particularization of the indictment, including identity and quantities of counterfeit goods, identity of unindicted co-conspirators, dates the defendants joined the conspiracy, specific acts in furtherance of the conspiracy, and information regarding the trademark the government alleges was infringed. Hu's motion [247], pp. 4-5; Smiley's motion [232], pp. 3-5; Naim's motion [230], pp. 3-5; Fowler's motion [241], pp. 2-3. In response, the government argues that defendants have failed to articulate any facts establishing the need for a bill of particulars and that the discovery produced to date and the indictment provides them with sufficient information about the alleged crime. Government's response [287], pp. 38-39.

The circumstances warranting a bill of particulars are limited. A defendant may obtain a bill of particulars only if the requested information is necessary "(i) to enable him to prepare his defense; (ii) to avoid unfair surprise at trial; and (iii) to preclude a second prosecution for the same offense." United States. v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985). A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the

defense". <u>United States v. Henry</u>, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994). "If the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." <u>United States v. Bortnovsky</u>, 820 F. 2d 572, 574 (2d Cir. 1987). "Whether to grant a bill of particulars rests within the sound discretion of the district court." <u>United States v. Panza</u>, 750 F. 2d 1141, 1148 (2d Cir. 1984).

"In deciding a motion for a bill of particulars, the important question is whether the information sought is necessary, not whether it is helpful." <u>United States v. Conley</u>, 2002 WL 252766, *4 (S.D.N.Y. 2002). The "burden is on the defendant to show that non-disclosure of the requested particulars will lead to prejudicial surprise at trial or will adversely affect his rights." <u>United States v. Nicolo</u>, 523 F. Supp. 2d 303, 315 (W.D.N.Y. 2007) (Larimer, J.). I find that defendants have not met this burden.

According to the government, "the dates of shipments of counterfeit merchandise, estimated calculations as to the quantities of such goods, and the prices charged by the conspirators for the merchandise is, to the extent known from the seized and/or recovered evidence, has already been available to the defense for the past fourteen months." Government's response [287], p. 39. Although I am mindful that "a large volume of discovery warrants a bill of particulars if it obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial," <u>United States v. Mahaffy</u>, 446 F. Supp. 2d 115, 120 (E.D.N.Y. 2006), defendants do not challenge the government's contention that it spent "considerable time and expense carefully organizing the evidence . . . . in order to provide access that would be meaningful and manageable for counsel, and to facilitate to the greatest extent possible review of all of the Government's available evidence." Government's response [287], p. 9. Defendants

also fail to articulate in terms specific to this case why the indictment, particularly when coupled with the discovery exchanged, fails to provide them with sufficient detail to prepare their defenses and to avoid prejudicial surprise at trial.

To the extent defendants seek particularization in order to clarify their roles or involvement in the conspiracy, "as a general rule, the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly. It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts." United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), aff'd, 875 F. 2d 857 (2d Cir. 1989), cert. denied, 493 U.S. 834 (1989).  Thus, "the government need not specify when a particular defendant joined the conspiracy, nor is it required to specify what role each defendant played in the conspiracy. . . .  Similarly, to the extent that defendants seek a description of the particular acts for which he or she is being held responsible, or a listing of the acts of which each defendant had knowledge, the case law is clear that the government is not required to provide the information." United States v. James, 2007 WL 914242,*26 (E.D.N.Y. 2007); United States  v. Chen, 2007 WL 2244213, *10 (S.D.N.Y. 2007) ("The Second Circuit . . . ha[s] routinely denied requests for Bills of Particulars concerning the 'wheres, whens, and with whoms' of the crime charged."). "Additionally, as the government can prove the existence of a conspiracy through circumstantial evidence, a Bill of Particulars comprised of very specific details is not required for a . . . conspiracy charge." United States  v. Mullen, 243 F.R.D. 54, 62 (W.D.N.Y. 2006) (Foschio, M.J.).

In determining whether defendants are entitled to the identity of indicted co-conspirators, the following factors should be taken into consideration: "(1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation." United States v. Nachamie, 91 F. Supp. 2d 565, 572-73 (S.D.N.Y. 2000).   Here, the alleged conspiracy, albeit extensive, is not complex.  Under these circumstances, I find that disclosure of the unidentified co-conspirators is unwarranted.  *See* United States v. Solomonyan, 451 F. Supp. 2d 626, 642 (S.D.N.Y. 2006) ("Defendants . . . possess substantial information about the charges against them. While there are a large number of identified coconspirators, the conspiracies alleged are not themselves complex. Thus defendants do not have the need, as compared, say, to defendants in an intricate fraud conspiracy, to identify unnamed coconspirators in order to piece together the nature of the charges against them.").  Therefore, this aspect of defendants' motions is denied.

**13.      Severance**

Defendants Fowler, Lin and Hu move to sever.  Fowler's motion [241], p. 5; Hu's motion [247], p. 21; Lin's motion [225], pp. 13-15. "Such motions are more appropriately heard and determined by the trial court, which is in the best position to rule on the issues presented." United States  v. Mireles, 2009 WL 4067643, *4 (W.D.N.Y. 2009) (Scott, M.J.).  Therefore, this aspect of defendants' motions is denied as premature, without prejudice to renewal before Judge Arcara.

## 14. Strike Surplusage

Defendant Hu moves to strike various surplusage from the indictment as immaterial, irrelevant and prejudicial, including the statements: "Selling counterfeit marks *harms many innocent victims*" (indictment [1], ¶8 (emphasis added)); defendants Lin and Hu "supplied BAZZI and others with *massive quantities* of footwear bearing counterfeit Nike marks" (id., ¶11 (emphasis added)); "willfully conspire . . . to . . . *attempt* to traffic in goods" (id., ¶10 (emphasis added)); and "defendants . . . engaged in a *criminal scheme* to traffic in millions of dollars of footwear bearing counterfeit Nike marks" (id., ¶11 (emphasis added)). According to the government, "the challenged language relating to the harm caused by trafficked merchandise, describing the quantities as 'massive' and providing an overview of the defendants' conspiratorial scheme, are all completely accurate, and will constitute part of the Government's proof at trial. . . . The 'attempt' language, meanwhile, is also appropriate as it constitutes part of the offense charged." Government's response [287], p. 53.

Rule 7(d) provides that "the court may strike surplusage from the indictment or information." "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial. . . . If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." United States v. Scarpa, 913 F. 2d 993, 1013 (2d Cir. 1990). Because such motions are held to an "exacting standard" (id.), they "are *rarely* granted." United States v. Jimenez, 824 F. Supp. 351, 369 (S.D.N.Y. 1993) (emphasis added).

Even accepting Hu's arguments, "it is axiomatic that an indictment is merely an allegation and proof of nothing. The court routinely instructs the jury on this point. Secondly, there is nothing in the law that requires submission of the indictment to the jury. While the court may elect to do so, the ultimate decision to submit it in its entirety, or in some redacted form, will depend on the nature of the trial evidence when the time comes for making that decision." United States v. Bruno, 2009 WL 2601249, *6 (N.D.N.Y. 2009); United States v. Griffin, 1996 WL 140073, *3 (S.D.N.Y. 1996) ("The Court's denial of Griffin's motion will not, however, leave him entirely without recourse. During the trial, Griffin can argue that the Government failed to introduce evidence supporting the alleged surplusage. At that point, if necessary, the Court can take measures to strike the offending language in the indictment."); United States v. Francis, 2008 WL 4426580, *2 (W.D.N.Y. 2008) (Payson, M.J./Larimer, J) ("Francis's motion to strike surplusage is . . . denied without prejudice to renewal should the language objected to not be the subject of proof or a reasonable inference from a subject of proof."). Therefore, Hu's motion to strike surplusage is denied, without prejudice to renewal before Judge Arcara.

15.    **Change of Venue**

Defendant Fowler moves for a change of venue to the Northern District of Texas, Dallas Division, for all matters involving him because he resides in Texas and nearly all of the acts alleged in the indictment against him occurred in Texas. Fowler's motion [241], pp. 5-6. According to Fowler, he will be unable to produce witnesses in New York to testify about his character and community activities because of the cost and distance. Id. In response, the government argues that "defendant fails to provide any specificity required for his change of

venue request." Government's response [287], p. 63. It also argues that "a considerable portion

of its evidence . . . is located in Buffalo, and a substantial number of conspirators who will testify

live either in or near Buffalo or New York. Other government witnesses . . . also live in this

area. Wiretap evidence is located in its entirety in this District, as is the prosecutor." Id.

> "For a conspiracy charge, venue is proper in any district in which the conspiracy

was formed or in any district in which a conspirator committed an overt act in furtherance of the

criminal scheme." United States v. Odunaike, 273 Fed. Appx. 58, 60 (2d Cir. 2008)(summary

order). Rule 21(b) provides that "the court may transfer the proceeding, or one or more counts,

against that defendant to another district for the convenience of the parties and witnesses and in

the interest of justice." "In deciding such a motion, the court should consider such factors as (a)

location of the defendants; (b) location of the possible witnesses; (c) location of the events likely

to be at issue; (d) location of relevant documents and records; (e) potential for disruption of the

defendants' businesses if transfer is denied; (f) expenses to be incurred by the parties if transfer

is denied; (g) location of defense counsel; (h) relative accessibility of the place of trial; (i) docket

conditions of each potential district; and (j) any other special circumstance that might bear on the

desirability of transfer. . . . No one of these considerations is dispositive, and it remains for the

court to try to strike a balance and determine which factors are of greatest importance." United

States v. Maldonado-Rivera, 922 F. 2d 934, 966 (2d Cir. 1990), cert. denied, 501 U.S. 1211

(1991).

> This is a high burden. "A criminal prosecution should be retained in the original

district, unless the interests of justice require a transfer. . . . To warrant a transfer from the

district where an indictment was properly returned it should appear that a trial there would be so

unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome. . . .  Additionally, the defendant bears the burden of justifying a transfer under Rule 21(b)."  United States v. Conner, 2001 WL 114314, *2 (S.D.N.Y. 2001).

"Courts have recognized, the impact of character witnesses is generally greater in the district where such witnesses live and work."  United States v. Martino,  2000 WL 1843233, *6 (S.D.N.Y. 2000).  However, courts have also recognized that "generally, a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer. . . . Defendants must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial. . . . the court must rely on 'concrete demonstrations' of the proposed testimony."  United States v. Spy Factory, Inc., 951 F. Supp. 450, 456 (S.D.N.Y. 1997), recon. denied, 960 F. Supp. 684 (S.D.N.Y. 1997);  United States v. Williams,  437 F. Supp. 1047, 1050-1051 (W.D.N.Y. 1977) (Elfvin, J.) ("The mere fact that it would be more convenient for defendant to have the case tried in the district in which he resides and in which his counsel are located is insufficient to support a change of venue.  Furthermore, defendant does not state how and to what degree producing his records and witnesses would be burdensome and expensive to him but merely argues in his memorandum that each factor listed above when applied to the facts in the instant case supports a change of venue in the interests of justice.  He does not provide any factual substantiation for such contention.  The burden on a motion for change of venue is on the movant (in this case the defendant) and he has failed to carry his burden.").  Here, Fowler has not made *any* particularized showing.

While I recognize that it would certainly be more convenient to Fowler to have this case prosecuted where he resides, he has "no constitutional right to be tried at his home."

United States  v. Dorfman, 335 F. Supp. 675, 677-678 (S.D.N.Y. 1971).  "Inconvenience to the defendant or his business is not, by itself, a sufficient basis for transfer. . . .  While there is a general 'policy' which favors trying a defendant where he or she resides, this 'policy' is balanced against the presumption that a criminal prosecution should be retained in the original district." Conner,  2001 WL 114314 at *3.

 "Every litigation, particularly a criminal prosecution, imposes burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities." Id. at *4. This case is no different.  Given that the indictment was returned here and considering all of the  factors, including the location of the government's witnesses and evidence, I find that Fowler has not met his burden of establishing that a transfer of venue is warranted.  Therefore, Fowler's motion to change venue is denied.


**16.     Leave to File Additional Motions**

Defendants Hu, Smiley and Naim request permission to file future motions if necessary.  Hu's motion [247], Schedule 8, p. 21; Smiley's motion [232], Point XVI; Naim's motion [230], ¶¶ 35-36.  Because defendants fail to identify any specific motions they will seek to file, this aspect of defendants' motions are denied, without prejudice to the possibility of additional motions in the future, upon a showing of good cause for why they were not timely asserted.  *See* Rule 12(e).

**B.      Dispositive Motions**

     **1.      Defendant Naim's Motion to Suppress**

     Defendant Naim moves to suppress evidence seized pursuant to a search warrant that was "devoid of probable cause".  Naim's motion [230], ¶¶21-23.  As I stated in my Interim Report, Recommendation and Order, Naim's motion is deficient in two critical respects [385], p. 24.  First, it fails to identify what search warrant he is referring to and second, he fails to establish his standing to contest the search.  These are indispensable components of any motion to suppress evidence seized pursuant to a search warrant.  *See* <u>United States v. Hamilton</u>, 538 F. 3d 162, 167 (2d Cir. 2008) ("A defendant seeking to suppress the fruits of a search by reason of a violation of the Fourth Amendment must show that he had a 'legitimate expectation of privacy' in the place searched.").   Because of these deficiencies, I recommend that Naim's motion be denied.

     **2.      Defendant Smiley's Motion to Suppress Statements**

     Because the government has not provided him with any notice of statements, Smiley reserves the right to file a challenge to the admissibility of his statements should they be offered into evidence against him.  Smiley's motion [232], p. 20.  As discussed above, Smiley may seek suppression of his statements in the future subject to demonstrating good cause for why such motion was not timely asserted  *See* Rule 12(e).

**3.      Defendant Smiley's Motion to Suppress Evidence[5]**

On September 11, 2007, Hon. G.R. Smith, United Magistrate Judge, United States District Court, Southern District of Georgia, signed a search warrant for Top of the Line Fashions, 2903 West Bay Street, Garden City, Georgia 31408, for violations of 18 U.S.C. §2320. Smiley's motion [232], Ex. A.  The warrant was supported by the affidavit of Joel Rountree, Special Agent, Immigration and Customs Enforcement.  Id.

Smiley argues that SA Rountree's affidavit "did not establish probable cause for the intentional trafficking in counterfeit shoes" because "many [of his] conclusions are hearsay, lacking any specific factual allegations upon which these conclusions were based." Smiley's motion [232], pp. 20-21.  Specifically, Smiley's counsel challenges Rountree's interpretation of the intercepted communications referenced in the search warrant application as discussing counterfeit sneaker transactions. Id., p. 21.  Smiley's counsel alleges "upon information and belief, [that] none of the summarized conversations suggest anything other than legitimate business dealings." Id.

"After-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review.  A magistrate's determination of probable cause should be paid great deference by reviewing courts." Illinois v. Gates, 462 U.S. 213, 236 (1983).  "Courts should not invalidate . . . warrants by interpreting affidavits in a hypertechnical, rather than a common sense, manner." Id.  "So long as the magistrate had a substantial basis for . . . concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." Id.

---

[5]      The government does not contest Smiley's standing to contest the search.

"A judge's probable-cause determination is not overly strict.  Presented with a warrant application, the judge must simply . . . make a *practical*, *common-sense* decision whether, given all the circumstances set forth in the affidavit set forth before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a *fair probability* that contraband or evidence of a crime will be found in a particular place."  United States v. Martin, 426 F. 3d 68, 74 (2d Cir. 2005), cert. denied 547 U.S. 1192 (2006) (emphasis in original). "Probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. at 232. "The inquiry turns on an assessment of probabilities and inferences, not on proof of specific criminal conduct beyond a reasonable doubt or even by a preponderance of the evidence . . . .  Simply put, probable cause is a relaxed standard . . . not a legal determination of legal guilt or liability."  Martin, 426 F. 3d at 76.

With these principles in mind, I will analyze Smiley's motion.  SA Rountree's affidavit in support of the search warrant stated that there were intercepted wire communications and controlled buys indicating that counterfeit merchandise was being sold by Top of the Line Fashions.  With respect to the intercepted wire communications, he stated that there were 20 wire communications between defendants Bazzi and Smiley that "dealt with the ordering, shipping, and/or payment of counterfeit sneakers".  Smiley's motion [232], Ex. A, ¶8.  Rountree summarized several of these conversations in his affidavit. Id., ¶10.

I agree with Smiley that many of the summarized telephone calls, on their face, do not expressly reference transactions of  "counterfeit" sneakers.  Smiley's motion [232], p. 21, Ex. A, ¶10.  However, one of the summarized intercepted wire communications do state that

-19-

Smiley "ordered 20 cases of *counterfeit* NIKE shoes. The order includes eight different colors . . . and four new blacks for nineteen dollars." <u>Id</u>., ¶10(e) (emphasis added).

"Courts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." <u>United States v. Gaskin</u>, 364 F. 3d 438, 457 (2d Cir. 2004), <u>cert</u>. <u>denied</u>, 544 U.S. 990 (2005). Likewise, "the magistrate is entitled to rely upon hearsay in determining whether a warrant should issue." <u>United States v. Abbarno</u>, 342 F. Supp. 599, 606 (W.D.N.Y. 1972) (Curtin, J.). Therefore, SA Rountree's interpretation of the intercepted wire communication was sufficient to establish probable cause that evidence of counterfeit goods would be found at the store.

Even if the intercepted wire communications were excluded from Rountree's affidavit, as noted above, a confidential source purchased twelve pairs of sneakers from Top of the Line Fashions in July and August 2007, which were later determined to be counterfeit. Smiley's motion [232], Ex. A, ¶¶13-14. This *alone* would be sufficient to establish probable cause for the search warrant.

Smiley's counsel also alleges, upon information and belief, that no inventory of the seized property was provided to defendant or promptly returned to the Magistrate Judge, no inventory was prepared in accordance with Rule 41(f)(1)(B), and the executing officer failed to give a copy of the warrant and a receipt for the seized property. Smiley's motion [232], pp. 21-22. However, in response, the government attaches the inventory from the search, which was returned to Judge Smith on September 19, 2007. Government's response [287], p. 83-84, Ex. 17.

Smiley also fails to include an affidavit from an individual with personal knowledge concerning his allegation that a copy of the warrant and a receipt for the property seized was not provided. *See* United States v. Clarke, 2006 WL 3615111, *5 (S.D.N.Y. 2006) ("In the absence of an affidavit of anyone with personal knowledge, an evidentiary hearing is unnecessary."). However, even accepting counsel's unsubstantiated assertion that a copy of the warrant and a receipt were not provided to Smiley by the executing officers as required by Rule 41(f)(1)(C), "mere failure to provide a copy of a warrant or receipt for seized items is not, by itself, sufficient to find a violation of Rule 41 . . . . Innocent violations of these rules do not require suppression and may be excused." United States v. McIntosh, 2008 WL 2952780, *6 (E.D.Mo. 2008). Therefore, I recommend that Smiley's motion to suppress evidence seized pursuant to the warrant be denied.

**4.      Defendant Wang's Motion to Suppress**[6]

Defendant Wang argues that the evidence seized from his bedroom during the September 12, 2007 search of 417 Bradley Avenue, Staten Island, New York should be suppressed because the affidavit of SA Brian Hurwitz, in support of the September 11, 2007, search warrant issued by Magistrate Judge Marilyn D. Go, of the Eastern District of New York failed to provide probable cause to believe that he committed a crime or that evidence of criminality would be located in the bedroom he occupied within the premises. Wang's

---

[6]      Wang submitted an affidavit indicating that he resided at the premises with his sister from May 2007 through September 2007 paying $300/month rent. Wang's supplemental motion [323], Ex. A. He alleges that he exercised control over the bedroom he rented at the premises. Id. The government concedes that defendant Wang's "supplemental motion and affidavit may be fairly read to allege standing to contest the search of the Staten Island premises." The government's response [332], ¶3.

supplemental motion [323], p. 3.[7]  He also argues that SA Hurwitz's affidavit fails to include the intercepted conversations or physical surveillance reports supporting his allegation that Wang and others were "heard and observed . . . engag[ing] in activities relating to the trafficking of counterfeit Nike shoes from [the premises]."  Id.

SA Hurwitz's affidavit in support of the search warrant identifies a number of intercepted conversations   Although I agree with Wang that SA Hurwitz's affidavit only minimally discusses his involvement in alleged counterfeit sneaker trafficking, I disagree with his contention that the affidavit "does not list a single act, which lends credibility to the allegation that [he] had trafficked or was trafficking in counterfeit footwear and apparel and possessed fruits or instrumentalities of that crime." Wang's supplemental motion [323], p. 3.  SA Hurwitz expressly states that "during the course of this investigation . . . both electronic surveillance agents and surveillance agents located at [the premises] have heard and observed HE BIN WANG, YUE FENG HUANG and *XU HANG WANG* and others engage in activities relating to the trafficking of counterfeit Nike shoes from [the premises]." Government's response [332], Ex. 1, ¶ 22 (emphasis added).  Contrary to Wang, SA Hurwitz's affidavit is not deficient for failing to attach the transcripts of the intercepted wire communications and surveillance reports.  *See* United States v. Jiminez, 224 F. 3d 1243, 1248 -1249 (11th Cir. 2000), cert. denied, 534 U.S. 1043 (2001).  ("This affidavit, at worst, summarizes the evidence gained through the wiretap. While it would perhaps have been preferable for the affidavit to have detailed some particular phone conversations, the affidavit states that those phone conversations 'indicate that'

---

[7]     Wang's motion is not paginated. Therefore, page references are to the CM//ECF numbering.

various drug activities were taking place; this is an objective presentation of the information gained by the investigating officers. Nor does the affidavit fail to specify the source of the information . . . the affidavit clearly states that the wiretap was the source of the information".).

Although Wang concedes that SA Hurwitz's affidavit connects him to the premises, he argues that it "does not specifically refer to [his] dwelling area". Wang's supplemental motion [323], p. 3. This argument is also unavailing. Significantly, Wang does not challenge that SA Hurwitz's affidavit established probable to believe that evidence of counterfeit sneaker trafficking would be located in the premises (which was also occupied by He Bin Wang and Yue Feng Huang and whose involvement in trafficking counterfeit goods is fully set out in SA Hurwitz's affidavit) or that the search warrant permitted a search of the entire premises, which was described as a single-family residence. Id., ¶6.

"The scope of a search pursuant to a valid warrant is defined by the warrant's description of the premises and the objects of the search, and by the places in which the officers have probable cause to believe those objects may be found." United States v. Kyles, 40 F. 3d 519, 523 (2d Cir. 1994), cert. denied, 514 U.S. 1044 (1995). Nevertheless, "the officers' authority to search premises described in a warrant is not unbounded. If, during the search, the officers become aware that the warrant describes multiple residences, the officers must confine their search to the residence of the suspect." Id. at 524. However, Wang has failed to establish that his bedroom, which was located within the premises, constituted a separate residence. No factors indicating a separate residence (separate access from the outside, separate doorbells, and separate mailboxes) are described by Wang. Id. While Wang's bedroom door was capable of being locked from the inside (Wang's supplemental motion [323], Ex. A, ¶3), "officers may

force open a locked door on the premises if they have probable cause to believe the objects sought are behind it." Id. at 523. Therefore, I recommend that Wang's motion to suppress physical evidence be denied.

### 5. Defendant Hu's Motions for Dismissal of the Indictment

#### a. Duplicity of the Conspiracy Count

Defendant Hu argues that the government has charged two conspiracies as a single count, namely, "one involving Mr. Bazzi and his distribution system, and perhaps some suppliers . . . and separate conduct between Ling Zhen Hu and Lin and Mr. Bazzi, almost as an afterthought, styled as a 'conspiracy,' but not actually anything more than a buyer/seller relationship." Hu's memorandum of law [248], p.9. In response, the government argues that "the count charges all defendants with a common objective to traffic, and attempt to traffic, in counterfeit Nike sneakers. Some defendants, such as HU and LIN, are alleged to be suppliers of the counterfeit merchandise to BAZZI. Other conspirators, consisting of BAZZI and those working with BAZZI, distributed the counterfeit merchandise to retailers located throughout the United States. This single conspiracy is not duplicitous." Government's response [287], p. 43.

"An indictment is duplicitous if it joins two or more distinct crimes in a single count. A duplicitous indictment, which alleges several offenses in the same count, must be distinguished from the allegation in a single count of the commission of a crime by several means . . . . The latter is not duplicitous." United States v. Aracri, 968 F. 2d 1512, 1518 (2d Cir. 1992). "In this Circuit it is well established that the allegation in a single count of a conspiracy

to commit several crimes is not duplicitous, for the conspiracy is the crime and that is one, however diverse its objects." Id.

With these principles in mind, I find that the indictment, which alleges various activities directed at the trafficking of counterfeit footwear, is not duplicitous. Nevertheless, "even assuming any of the counts challenged by Defendants were found to be duplicitous such fact does not require dismissal as the remedy of a special jury instruction to assure unanimity will avoid any prejudice to Defendants." United States v. Parker, 165 F. Supp. 2d 431, 451 (W.D.N.Y. 2001) (Arcara, J./Foschio, M.J.).

Hu argues that "in addition to a statutorily defined offense, [the indictment also charges that they] engaged in an undefined 'criminal scheme.' This is completely unnecessary while creating an apparent basis for a jury to convict other than for the statutory offense." Hu's reply memorandum of law [291], p. 3. He also argues that "a vague allegation of 'criminal scheme' renders the first count of the indictment duplicitous, because it alleges two crimes in one count." Mahoney affirmation [247], ¶25.

The first count of the indictment contains a section entitled "The Defendants' Criminal Scheme" and charges, *inter alia*, that defendants "engaged in a criminal scheme to traffic in millions of dollars of footwear bearing counterfeit Nike marks." Indictment [1], Count 1, ¶11.

I do not read these allegations as a separate crime. Rather, "it is this requirement of an agreement to participate in a criminal scheme that distinguishes conspiracy from the related offense, aiding and abetting." United States v. Toler, 144 F.3d 1423, 1426 n. 4 (11th Cir. 1998).

Even assuming Hu's argument is correct, any confusion can be alleviated by a proper jury instruction. *See* Parker, 165 F. Supp. 2d at 451. Therefore, I recommend that this aspect of Hu's motion be denied.


### b.     Conspiracy to "Attempt"

Relying on United States v. Meacham, 626 F. 2d 503 (5th Cir.1980), cert. denied, 459 U.S. 1040 (1982), Hu argues that "the indictment must be dismissed insofar as it alleges a conspiracy, the object of which is to merely attempt the commission of an offense, this does not state an offense cognizable under the United States Code." Hu's motion [247], ¶3. In response, the government argues that "the substantive offense of trafficking is committed in one of two ways; namely, when one traffics, or attempts to traffic, in counterfeit goods." Government's response [287], p. 48.

Hu's reliance on Meacham is misplaced. "The defect in the indictment in Meacham was that it contained two 'attempt and conspiracy' statutes, 21 U.S.C. §§963 and 846, but had no underlying substantive offense statute." United States. v. Adesida, 129 F. 3d 846, 851 (6th Cir. 1997), cert denied, 523 U.S. 1112 (1998). The indictment at issue here does not suffer from the same defect. It tracks the language of the underlying offense, 21 U.S.C. §2320, by charging defendants with conspiring "to intentionally traffic and attempt to traffic in goods . . . in violation of Title 18 U.S.C. Section 2320. . . .  All in violation of Title 18, United States Code, Section 371." Indictment [1], Count 1. Therefore, I recommend that this aspect of Hu's motion be denied.

### c.       Destruction of the Infringing Items

Defendant Hu argues that the "government has destroyed vast amounts of claimed infringing products disabling the defense from being able to challenge whether the alleged trademark on those items was sufficiently similar to the registered trademark . . . .  This action was in violation of the right of the accused to present a defense and her right to effective assistance of counsel, right to confrontation, and right to a fair trial".  Hu's motion [247], ¶¶26-38.  In response, the government concedes that "sometime after October 27, 2008, the New York City Police Department destroyed counterfeit merchandise which it had seized from warehouses utilized by co-defendants WANG HE BIN and HUANG YUE FENG."  Government's response [287], p. 47.  However it argues that "the seized property did not come from or belong to Hu (or her husband).  It also was not destroyed by the Government. Nevertheless, photographs of the property are available for (any) counsel's review.  Counsel also could have viewed the property in person had he wished, prior to the destruction of it, and was explicitly told so by the Government." Id.[8]

"The Government's loss of evidence may deprive a defendant of the right to a fair trial." United States v. Rahman, 189 F. 3d 88, 139 (2d Cir. 1999), cert. denied, 528 U.S. 982 (1999). "To establish a violation of the right to present a defense based on lost evidence, a defendant must show that the evidence was material and exculpatory, and that it was 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' . . . .  Moreover, unless the defendant can show bad faith on the part of the

---

[8]       On April 20, 2009, the government moved for leave to destroy the seized items in its possession [383], which I denied  [441].

state, 'failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" Buie v. Sullivan, 923 F. 2d 10, 11-12 (2d Cir. 1990). "The appropriateness and extent of sanctions. . . depends upon a case-by-case assessment of the government's culpability for the loss, together with a realistic appraisal of its significance when viewed in light of its nature, its bearing upon critical issues in the case and the strength of the government's untainted proof." United States v. Grammatikos, 633 F. 2d 1013, 1019-20 (2d Cir. 1980).

Because the government was not directly responsible for the destruction of the evidence, defendants' counsel was provided the opportunity to inspect the evidence before it was destroyed, and photographs of the evidence were taken, I recommend that the indictment not be dismissed on this basis, without prejudice to defendants' right to seek lesser sanctions or an appropriate instruction from Judge Arcara.


**d.  Facial Insufficiency**

Defendant Hu argues that the indictment contains "no hint at any fact supporting a conclusion that she and Lin are part of any larger distribution conspiracy. They did not engage in any over acts.  They are not even charged in any substantive counts.  Even in the discovery it is apparent that neither had any contact with any other person in the case." Hu's memorandum of law [248], p.15.  "It is well-established, however, that an indictment that is valid on its face, as is the case here, cannot be dismissed on the ground that it is based on inadequate or insufficient evidence. Instead, the time to advance such a motion is after the government has presented its case at trial." United States v. Williams,  2008 WL 4516234, *8 (W.D.N.Y. 2008) (Larimer, J).

Hu argues that "the mere allegation that HU and/or Lin supplied Bazzi with shoes which may have infringing trademarks on them would not even be sufficient to establish a crime of conspiracy with Bazzi, much less a conspiracy with unknown other persons with whom Bazzi may have conspired as his suppliers and distributers." Hu's memorandum of law [248], p. 15.

"Evidence of a buyer-seller relationship, standing alone, is insufficient to support a conspiracy conviction." United States v. Townsend, 924 F.2d 1385, 1394 (7th Cir. 1991). However, in addition to alleging that "LING ZHEN HU XIAO and CHENG LIN also supplied BAZZI and others with massive quantities of footwear bearing counterfeit Nike marks, which sneakers were also then distributed to conspirators" (indictment [1], ¶11), the indictment alleges that Lin, Hu, Bazzi and others "knowingly and willfully conspire[d] and agree[d], together and with each other, to . . . intentionally traffic and attempt to traffic . . . footwear, while knowingly using, on and in connection with such goods, counterfeit marks of Nike". Id., ¶10. This plainly makes Hu's alleged involvement beyond merely being a seller of counterfeit goods.

Moreover, "the rationale for holding a buyer and a seller not to be conspirators is that in the typical buy-sell scenario, which involves a casual sale of small quantities . . . there is no evidence that the parties were aware of, or agreed to participate in, a larger conspiracy. . . . . This rationale does not apply, however, where, as here, there is advanced planning among the alleged co-conspirators to deal in wholesale quantities . . . obviously not intended for personal use. Under such circumstances, the participants in the transaction may be presumed to know that they are part of a broader conspiracy." United States v. Medina, 944 F.2d 60, 65-66 (2d Cir. 1991), cert denied, 503 U.S. 949 (1992). The same holds true here, as Hu is alleged to have

supplied Bazzi with "massive quantities bearing counterfeit Nike marks" which certainly suggests that the sneakers provided to Bazzi were not for personal use.  Indictment [1], ¶11.[9]

Hu also suggests that the indictment is deficient because Hu "did not engage in any overt acts".  Hu's memorandum of law [248], p. 15.  Although there are no overt acts expressly alleged against defendants Hu in the "overt acts" section of the indictment, 18 U.S.C §371, requires only that "one or more of such persons do any act to effect the object of the conspiracy ".  *See* Government's  response [287], p. 46 n.37. Therefore, I recommend that this aspect of Hu's motion be denied.


6.      **Defendant Hu's Motion to Suppress Intercepted Wire Communications**

On March 23, 2007, New York State Supreme Court Justice Penny M. Wolfgang executed an eavesdropping warrant effective for 30 days for the telephone of defendants Cortez and Moricia Waters, which ordered "that the communications which may be intercepted are those which relate to the offenses of Criminal Possession of a Controlled Substance".  Government's response [287], Ex. 6.  On April 2, 12 and 23, 2007, Justice Wolfgang was provided with ten-day notices. Id.,  Exs. 8-10.  Sometime during the course of the interceptions, the government learned of the alleged counterfeit trafficking.  On April 20, 2007, shortly before the initial eavesdropping warrant was set to expire, Niagra County District Attorney Matthew Murphy applied for an extension of the warrant, and on that date Justice Wolfgang signed an amended warrant *nunc pro tunc*  permitting interceptions related to the criminal possession of

---

[9]      My recommendation does not preclude Hu from seeking a buyer-seller jury instruction  at trial. *See*  Medina, 944 F.2d at 65.

controlled substances, as well as trademark counterfeiting from March 23, 2007 until April 22, 2007.  Government's response [287], Exs. 11 and 12.   The application was supported by the affidavit of Christopher Clark [322-2].   The amended warrant stated that the "application to amend has been made as soon as practicable and within ten days after probable cause exists to believe that the crime of Trademark Counterfeiting  . . . , a crime not named in the original warrant has been, is, or is about to be committed".  Government's response [287],  Ex. 12.

On May 22, 2007, Hon. William M. Skretny, United States District Judge, signed an order authorizing the interception of wire communications over the telephones used by defendants Cortez Waters and Bazzi related to the distribution of counterfeit sneakers. Government's response [287], Ex. 14.  This application was supported by an affidavit from Immigration and Customs Enforcement Special Agent Kevin R. Ryan. Government's response [287],  Ex. 13, Ryan affidavit, ¶9.

Judge Skretny's Title III warrant was extended on June 25, 2007, to the telephones of defendants Bazzi, Rachid and Wang He Bin, on August 1, 2007, to the telephones of defendants Bazzi, Wang and Rachid, and on September 7, 2007, to the telephones of defendants Wang and Bazzi.  Government's response [287], p. 2 n.2.  Defendant Hu asserts a variety of arguments in support of her motion to suppress the intercepted wire communications, which I address individually.

### a.      Was the Initial State Wiretap Warrant Properly Amended?

Defendant Hu argues that after the state wiretap warrant was approved, conversations were "deliberately intercepted which related to commerce in the sale of sneakers."

Hu's motion [247], ¶94. In response, the government contends that Hu lacks standing to contest the wiretap issued by Justice Wolfgang because she is not overheard on the wire and her telephone was not tapped. Government's response [287], pp. 64-65.

"Under Title III, only an 'aggrieved person' has standing to challenge the validity of a wiretap." <u>DeVittorio v. Hall</u>, 2008 WL 5147198, *9 (S.D.N.Y. 2008). An aggrieved person is defined as a "person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. §2510(11).

Hu contends that her "arguments are not dependent on her standing to challenge the state wiretap. . . . We clearly identified 18 U.S.C. §2517(5) as the rule that the government violated, not any state wiretapping rule. §2517 operates independent of any claim or remedy which any subject may have in relation to the earlier wiretap. §2517(5) is indifferent to the whether the subjects of the Title III order were also subjects of the prior eavesdrop order." Hu's reply [291], p. 11. This argument misses the mark. The alleged violation of 18 U.S.C. §2517(5), which Hu complains of, occurred with respect to the state wiretap warrants, not the Title III wiretap. Thus, Hu must establish standing to contest those warrants. Therefore, I recommend denying Hu's motion on this basis.

Even assuming that Hu has standing to contest the state wiretap warrants, I would recommend denying this aspect of her motion. "The New York statutory requirements track the federal statute". <u>United States v. Scala</u>, 388 F. Supp. 2d 396, 404 (S.D.N.Y. 2005). 18 U.S.C. §2517(5) provides:

"When an investigative or law enforcement officer, while engaged in intercepting wire. . . communications in the manner authorized herein, intercepts wire . . . communications relating to offenses other than those specified in the order of authorization . . . , the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable."[10]

"Congress intended that judicial approval of the interception of evidence relating to unauthorized offenses might retroactively be granted pursuant to §2517(5) upon a showing that 'the original order was lawfully obtained, that it sought in good faith and not as a subterfuge search, and that the communication was in fact incidentally intercepted during the course of a lawfully executed order.'" United States v. Masciarelli, 558 F. 2d 1064, 1068 (2d Cir. 1977) (*quoting* S. Rep.No. 1097, 90th Cong., 2d Sess., reprinted in 1968 U.S. Code Cong. & Admin.News p. 2189). Although the statute indicates that "such application shall be made as soon as practicable", "the statute does not contemplate the immediate amendment of orders of authorization as soon as any information relating to other offenses is intercepted. To so maintain is to ignore the existence of Section 2517(1) and (2) which explicitly allow the use of such

---

[10]       NY Crim. P. Law §700.65(4), the state counterpart to §2517(5),  provides: "The application for such amendment must be made by the applicant as soon as practicable by giving notice to the court of the interception of the communication or the making of the observation and of the contents of such interception or observation; provided that during the period in which the eavesdropping or video surveillance is continuing, such notice must be given within ten days after probable cause exists to believe that a crime not named in the warrant has been, is being, or is about to be committed, or at the time an application for an order of extension is made pursuant to section 700.40 of this article, if such probable cause then exists, whichever is earlier."

information without an amendment to the order of authorization." United States v. DePalma, 461 F.Supp. 800, 825 (S.D.N.Y. 1978).

Hu argues that "more than 3 weeks went by before the amended order was sought". Hu's reply [291], p. 13. She is correct that the state wiretap warrant remained in effect for several weeks before it was amended. However, it is evident that the government did not have probable cause to believe that the intercepted communications were discussing the trafficking of counterfeit goods until on or about April 11, 2007. Government's response [287], Ex. 8, April 12, 2007 ten-day letter (April 11, 2007 entry -"It should be noted that your affiant is working with both the United States Attorney's Office . . . and the United States Customs Service in regard to Cortez WATERS involvement in the trafficking of counterfeit sneakers."). The ten day-letters demonstrate that prior to this time, there was some uncertainty about defendant Cortez Water's activities. *See* March 24, 2007 entry ("At this time your affiant has not determined if WATERS is actually selling shoes or is using crypted terms when talking to his drug customers."); March 31, 2007 entry ("Your affiant believes that Waters *will be* using this large van to travel back and forth between New York City and Buffalo/Niagara Falls area to transport both his narcotics and bootleg sneakers that he has been purchasing in New York City" (emphasis added)).

Merely because the agents initially intercepted conversations discussing sneakers does not mean that they had probable cause to believe that they were intercepting communications relating to the trafficking of counterfeit sneakers. As explained by SA Ryan in his affidavit in support of the Title III warrant, "investigators assigned to the wiretap case were unclear if WATERS was using cryptic phrases and terminology which discussing the sale and

purchase of sneakers, as a way to disguise drug trafficking activities.  In an effort to obtain

additional information/evidence on these activities . . . law enforcement personnel conducted

surveillance . . . .  This surveillance confirmed that WATERS was distributing suspected

counterfeit Nike shoes."  Government's response [287], Ex. 13, Ryan affidavit, ¶20.

Recognizing  this, Hu alleges that the "agents . . . deliberately under-informed

[Justice Wolfgang] prior to [seeking the amendment] about what they actually had been doing"

and that "the agents dramatically understated the number of conversation [*sic*], and failed to

disclose that they were listening to conversations which were only about sneakers and not at all

about drugs".  Hu's reply [291], p. 14.  Such speculation is unavailing. Therefore, I find that the

amendment was timely sought within 10 days of the officers having  probable cause that they

were intercepting conversations relating to the trafficking of counterfeit goods and would

recommend denying  this aspect of Hu's motion on this basis if she had standing to contest it.


**b.      Did the Government Fail to Fully Disclose the State Wiretap**
**Warrants?**

Defendant Hu argues that communications intercepted pursuant to  the Title III

warrant should be suppressed because the government failed to fulfill its obligation pursuant to

18 U.S.C. §2518(1)(e) to fully disclose to Judge Skretny that  Justice Wolfgang's amended

warrant failed to comply with 18 U.S.C. §2517(5). Hu's memorandum of law [248], pp. 32-33.

The government responds that it properly notified Judge Skretny of both the March 23, 2007 and

April 20, 2007 state wiretaps and of the background of the investigation, including its inception

as a narcotics investigation.  Government's response [287], p. 68.

Pursuant to 18 U.S.C. §2518(1)(e) the government's application must give "a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application".  Having found that the state warrant was properly amended,  I find Hu's argument that  "the government did nothing to alert Judge Skretny to the fact that the claimed 'Amendment' to the Wolfgang warrant was totally invalid as a matter of New York law", to be unfounded.  Hu's reply [291], p. 16.  In any event, the application presented to Judge Skretny did not hide anything.  It identified both the March 23, 2007 eavesdropping warrant and the April 20, 2007 amended warrant, and disclosed that through its narcotics investigation the government learned of the counterfeit sneaker trafficking. Government's  response [287], Ex. 13, Ryan affidavit, ¶20.  "The statute does not require a fully detailed statement about the contents of the interception although, of course, a judge may require such additional facts before granting an order."  United States v. Kilgore, 518 F. 2d 496, 500 (5th Cir. 1975), cert. denied 425 U.S. 950 (1976).

Faced with these facts, Hu again relies  purely on conjecture to argue that the government was "not confident that Judge Skretny could be persuaded that the amendment . . . cured the problem, so they hid it from him." Hu's reply [291], p. 17.   Therefore, I recommend that this aspect of Hu's motion to suppress be denied.

c.      Did the Government's Failure to Disclose the State  Wiretap
        Warrants Violate **Brady**?

Hu argues that "even if the failure to fully disclose the facts to Judge Skretny were overlooked, there remains the question of what sanction to impose upon the government for its failure to inform the defense specifically about the absence of judicial authorization, based

-36-

upon the required findings, under §2517(5) . . . .  There is little question that this information is favorable to the accused . . . .  The obvious remedy for the effort to circumvent the ability of the defense to ferret out the fatal defects in the warrant in this case is to grant the motion to suppress in its entirety."  Hu's memorandum of law [248], pp. 34-35; Mahoney's supplemental affirmation [304].

Because I find that the state wiretap warrants were lawfully issued, I likewise find no Brady violation by the government, and recommend that this aspect of Hu's motion to suppress be denied.

### d.       Was the Title III Warrant Supported by Probable Cause?

Hu argues that "with state investigators unwilling to prolong their own investigation, and without federal authority to use electronic surveillance in a case involving mere commerce in goods which may have counterfeit trademarks, the government chose to recast their investigation not as a trademark infringement case, but as a RICO case.  The problem is that there is one ineluctable requirement for a RICO prosecution, the existence of an 'enterprise' which can be an association . . . .  But that association has to have an existence independent of  the illegal activity being investigated . . . .  [T]he application for the wiretap in this case completely fails to even suggest the existence of any 'enterprise' beyond the association which was minimally essential to the a course of dealing in cheap sneakers which may have counterfeit trademarks on them."  Hu's memorandum of law [248], p. 35.  In response, the government argues that there was an "ample basis for Judge Skretny to conclude that the defendants, more probably than not, constituted an 'enterprise.'"  Government's response [287],

pp. 71-74. It also argues that "even if Judge Skretny erred in his finding of probable cause, the Government could still rely on it in good faith reliance." Id. at p.73 n.54.

18 U.S.C §2518(3) requires that "before issuing an order for interception of wire communications, the judge must determine, based on the facts in the affidavit, that there is probable cause to believe that a crime has been, is being, or is about to be committed; probable cause to believe that communications about the crime will be obtained through the wiretap; that alternative means have been tried and failed or appear too dangerous or unlikely to succeed; and probable cause that the premises to be wiretapped are being used for criminal purposes or are used or owned by the target of the wiretap." United States v. Wagner, 989 F. 2d 69, 71 (2d Cir. 1993). "The test for determining probable cause under 18 U.S.C. §2518 is the same as that for a search warrant." Id.

18 U.S.C. §2516 prescribes the offenses that may be assisted with wiretaps. Because trafficking in counterfeit goods (18 U.S.C. §2320) is not one of the prescribed offenses, the application for the Title III warrant was based on probable cause to believe that a violation of the racketeering influenced and corrupt organizations ("RICO") statute (18 U.S.C. §1963) was occurring. Government's response [287], Ex. 13, Hochul affidavit, ¶3.

"To secure a conviction under RICO, the Government must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering activity.'" United States v. Turkette, 452 U.S. 576, 583 (1981). An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4). "The definition-though broad-is not without limits. A RICO enterprise must be something more than a simple

conspiracy; there must be some sort of ongoing informal organization or structure." United States v. Henderson, 2008 WL 5246045, *2 (2d Cir. 2008) (summary order), cert. denied, 130 S.Ct. 54 (2009). The "enterprise must have an existence separate from the series of criminal acts that constitute its racketeering activity." United States v. Mejia, 545 F. 3d 179, 203 (2d Cir. 2008); Turkette, 452 U.S. at 583 ("The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages."). It is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Turkette, 452 U.S. at 583.

SA Ryan's affidavit establishes that "Malik" supplied Waters with counterfeit sneakers, and that in turn, Waters supplied numerous stores with counterfeit merchandise and directed customers accordingly. Government's response [287], Ex. 13, Ryan affidavit, §VI. Although there is little presented in SA Ryan's affidavit indicating that this group of individuals had an existence separate from the counterfeit trafficking it was undertaking, SA Ryan opined that Waters and others constituted an "enterprise". Government's response [287], Ex. 13, Ryan affidavit, ¶5 n.2. "The Second Circuit has recognized, 'a government agent's expert opinion . . . is an important factor to be considered by the judge when making a probable cause determination.'" United States v. DiLorenzo, 1995 WL 169003, *3 (S.D.N.Y. 1995). Viewing the totality of the circumstances, including SA Ryan's opinion, and mindful of the substantial deference paid to the issuing court's determination, I find that the Title III warrant was supported by probable cause.

Even assuming *arguendo* that the Title III warrant was not supported by probable cause, the evidence would nevertheless be admissible under the good faith exception to the

exclusionary rule set forth in <u>United States v. Leon</u>, 468 U.S. 897, 923 (1984). Where the

"outcome of the probable cause challenge is so close, whether or not probable cause is found . . .

the agents [are] entitled to rely reasonably upon the issuing judge's determination of that very

question". <u>United States  v. Sykes</u>, 424 F. Supp. 2d 590, 602 (W.D.N.Y. 2006) (Telesca, J.)

(citing cases), <u>aff'd</u>, 304 Fed. Appx. 10 (2d Cir. 2008), <u>cert</u>. <u>denied</u>, 129 S.Ct. 2022 (2009). For

these reasons, I recommend that this aspect of Hu's motion to suppress be denied.


   **e.  Was the Title III Warrant Supported by a Sufficient Showing of Necessity?**

   Hu argues that "'traditional' methods of investigation, such as physical

surveillance, were successful, but not fully exploited. Other techniques were not even

mentioned, attempted, or ruled out, such as getting authorization to place a GPS tracking device

on relevant vehicles, remote surveillance using CCTV camera, for example on Bazzi's

warehouse." Hu's memorandum of law [248], p. 38. In response, the government argues that

"an examination of Agent Ryan's exhaustive treatment of the necessity subject in his affidavit . .

. demonstrates the contrary." Government's response [287], pp. 74-76.

   18 U.S.C. §2518(1)(c) requires that an application for the interception of

electronic communications include "a full and complete statement as to whether or not other

investigative procedures have been tried and failed or why they reasonably appear to be unlikely

to succeed if tried or to be too dangerous."

   SA Ryan's affidavit explained that the law enforcement techniques used to that

point, including confidential sources, surveillance, interviews, introduction of undercover

officers and search warrant, had only produced limited results. Government's response [287],

Ex. 13, Ryan affidavit, §VII.   It also explained why conventional search warrants, interrogation, collection of shipping records from legitimate shippers, trash pulls, mail covers, and grand jury investigations would not be beneficial to the investigation. Id.

Hu relies on United States v. Lilla, 699 F.2d 99, 104 (2d Cir. 1983), which precluded the authorization of wiretaps based upon "generalized and conclusory statements that other investigative procedures would prove unsuccessful".   Hu's memorandum of law [248], pp. 44-45.  However, "Lilla has been distinguished at least three times by the Second Circuit itself and by at least two District Courts in this Circuit." United States v. Davis,  2008 WL 5115225, *3 (W.D.N.Y. 2008) (Skretny, J./Scott, M.J.).  The Second Circuit has made clear that "the purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." United States. v. Hinton,  543 F.2d 1002, 1011 (2d Cir.), cert. denied, 429 U.S. 980 (1976).

Hu also  argues that necessity is a question of law reviewed *de novo*.  Hu's reply [291], p. 19 n. 10.  This is incorrect. "In assessing whether the government has satisfied this burden, the Second Circuit has warned that the averments alleged in connection with the use of normal investigative techniques are not to be reviewed *de novo*. Torres, 901 F.2d at 231. The role of the reviewing Court instead is simply to 'decide if the facts set forth in the application were minimally adequate to support the determination that was made.' Torres, 901 F.2d at 231". Davis, 2008 WL 5115225 at *3.

Mindful that my role is not to conduct a *de novo* determination of necessity, but rather to determine whether the application is minimally adequate, I recommend that this aspect of Hu's motion for suppression be denied. *See* Davis, 2008 WL 5115225 at *4 ("Particularly in light of the *deferential standard* to be applied, the defendants' assertion that the government failed to meet the necessity requirement must fail." (emphasis added)).

### 7. Defendant Hu's Motion to Suppress Evidence from the Search Warrant Executed at 149th Place on September 13, 2007

Defendants Lin and Hu resided at the 149th Place address. Defendant Hu challenges the search warrant on several grounds, including lack of probable cause, lack of good faith, facial overbreath and overbreath as executed. Hu's memorandum of law [248], p. 47; Hu's February 19, 2009 letter [329].

In a separate Report and Recommendation [587], I am recommending that Hu's and Lin's motions to suppress the evidence seized from the search of their residence on September 12 and 13, 2007 be granted. However, in the event my recommendation is not adopted, I will analyze the remaining aspects of Hu's motions directed at the September 12 and 13, 2007 searches.

### a. Was the Search Warrant for 149th Place Supported by Probable Cause?

The September 13, 2007 search warrant was supported by the affidavit of SA Hurwitz. Lin's motion [226], Ex. A. SA Hurwitz's affidavit includes numerous facts establishing probable cause that evidence of criminality was located at defendants' residence, including that on September 11, 2007 defendants Lin and Hu were indicted with conspiracy to

traffic in counterfeit merchandise (¶14) and when they were arrested on September 12, 2007, at their residence, photographs of sneakers, a money counting machine, and approximately $1,800 were observed in plain view. ¶19. Based upon his investigation and experience, SA Hurwitz opined that "sellers of counterfeit merchandise frequently show pictures of their products to potential buyers." Id.

Given these facts and viewing the totality of the circumstances presented in SA Hurwitz's affidavit, I find that the search warrant for Hu's residence was supported by probable cause. Therefore, I recommend denying this aspect of Hu's motion to suppress.

### b. Was the Search Warrant for 194th Place Facially Overbroad?

The Fourth Amendment requires that warrants "particularly describ[e] . . . the . . . things to be seized." U.S. Const. amend. IV. Thus, "general searches have long been deemed to violate fundamental rights." Marron v. United States, 275 U.S. 192, 195 (1927). However, "courts tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant." United States v. Young, 745 F.2d 733, 759 (2d Cir.1984), cert. denied, 470 U.S. 1084 (1985). In order for a search warrant to comply with the particularity requirement of the Fourth Amendment, it must enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." United States v. Smith, 2007 WL 2088938, *1 (W.D.N.Y. 2007) (Arcara, J.).

Hu argues that search warrant was overly broad because it stated "the items sought to be seized include, *but are not limited to*, the following" (emphasis added). It also authorized the seizure of records without regard to whether they were associated with a criminal act and "all apparel or other items, including, but not limited to Nike foot wear, that bear, or that appear to be possessed with the intent to affix, counterfeit marks." Mahoney affirmation [247], ¶¶153 and 154.

"Although somewhat broadly worded, the Court finds that this list of items to be searched for and seized was sufficiently particular to enable the executing officers to ascertain and identify with reasonable certainty those items that [the] Judge . . . had authorized them to seize. The Second Circuit, in upholding broadly worded categories of items available for seizure, has expressly noted that 'the language of the warrant is to be construed in light of an illustrative list of seizable items.' United States v. Riley, 906 F.2d 841, 844 (2d Cir.1990) . . . . It is true that a warrant authorizing seizure of records of criminal activity permits officers to examine many papers in a suspect's possession to determine if they are within the described category. But allowing some latitude in this regard simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked 'drug records.'" Smith, 2007 WL 2088938, *2-3. Moreover, although the search warrant used the language "included but not limited to" in describing the categories of items that could be seized, it instructed that any item seized "must relate to violations of Title 18, United States Code. Sections 1962 and 2320".[11] Therefore, I recommend that this aspect of Hu's motion be denied.

---

[11]     *Compare with* United States v. George, 975 F.2d 72, 75 (2d Cir. 1992) ("The instant warrant's broad authorization to search for 'any other evidence relating to the commission of a crime' plainly is not sufficiently particular with respect to the things to be seized because it effectively granted the executing officers' 'virtually unfettered discretion to seize anything they [saw].'").

### c.    Was There a Good Faith Reliance on the Search Warrant?

Defendant Hu argues that "the use of improperly seized interceptions . . . the thin nature of the probable cause, the concealment of facts and misstatement of facts historically in he [*sic*] investigation and warrant applications, the unwarranted entry on the day before and the overbroad seizures, together with all the other facts in the case preclude a finding or [*sic*] good faith in the execution of the warrant." Hu's memorandum of law [248], pp. 53-54.

For the reasons stated in my separate Report and Recommendation [587], I do have some concerns in this regard. If that Report and Recommendation is adopted by Judge Arcara, those concerns need not be addressed. However, if it is not, then I will schedule further proceedings to address those concerns.[12]

### d.    Was there Overbroad Execution of the Warrant?

Of the 940 pages of documents seized during the September 13, 2007 search, Hu contends that the authorities improperly seized "an All-State [*sic*] insurance identification card for 2000 Ford Econoline Van, a notice of judgment for unpaid parking tickets, various envelopes from the Times Ledger newspaper and United Healthcare and MetLife, a receipt for Ykea Insurance Agency, a Care Plus Health Plan card, a family photograph, Yohan Park's invoice for client Hu- attorney retainer fee of $700 (7/21/01), Xiao Cheng Lin's check for a NY parking violation, an Ex-Parte Temporary Stay Away Order of Protection for Hu against Xiao, a

---

[12]    My Interim Report, Recommendation and Order denied defendant Hu's motion to conduct a <u>Franks</u> hearing concerning the contents of the September 13, 2007 search warrant application for Lin and Hu's residence.  [385], pp. 16-18.  However, based upon the suppression hearing testimony, there may be reason to reconsider that determination.

Criminal Order of Protection - Xiao stay away from Hu, Xia's complaint of stolen property, Xiao's Lincoln town car buyer's receipt . . ., a cargo theft/anti-crime unit report - stolen trailer, Hu's birth certificate registration, and a City of New York letter to Xiao - effective 5/11/07 Direct Shelter Allowance Payment to be discontinued." Hu's February 19, 2009 letter [329], pp. 1-2. According to Hu, none of these "items speak to the alleged criminal behavior under investigation or were authorized to be seized within the search warrant, yet the items were seized." <u>Id</u>., p. 2. In response, the government argues that these documents were seized within the parameters of the warrant, which permitted the seizure of "photographs and other forms of identification of associates and co-conspirators". Government's February 24, 2009 letter [338], p. 2.

From their description, I can readily determine that some of the documents fall within the scope of the search warrant. For example, the family photograph and Hu's birth certificate appear to constitute "photographs and other forms of identification of associates and co-conspirators". I also find that the receipt for the vehicle would constitute "receipts relating to illegal sales and to the expenditure of proceeds of illegal activities". However, it is not readily apparent from the description of the other documents as to whether they fall within the scope of the search warrant. Therefore, I will reserve judgment on this aspect of defendant's motion. If my recommendation to grant Lin's and Hu's motions to suppress the evidence seized from their apartment on September 12 and 13, 2007 is not adopted, I will request copies of these documents and hear testimony (if necessary), before deciding this aspect of Hu's motion.

## CONCLUSION

For these reasons, I order that defendants' non-dispositive motions be granted in part and denied in part as set forth herein, I also recommend that defendants' motions to suppress evidence and to dismiss the indictment be denied, with the exception of Hu's motion to suppress that were seized outside the scope of the September 13, 2007 search warrant. A decision on this aspect of Hu's motion is deferred, if necessary, pending resolution of any objections to my Report and Recommendation addressing Lin's and Hu's motions to suppress evidence seized from the September 12 and 13, 2007 search of their apartment.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by May 10, 2010 (applying the time frames set forth in Fed. R. Crim. P. 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with

the provisions of Rule 58.2(a)(3) may result in the district judge's refusal to consider the

objection.

**SO ORDERED**.

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge


Dated: April 21, 2010